# ADDENDUM A

<u>Description of Nature of Action</u>

On June 13, 2012, Plaintiff, a shareholder in Facebook, Inc. ("Facebook"), commenced a shareholder derivative action on behalf of Facebook in the Superior Court of the State of California, San Mateo County, against each of Facebook's directors for breach of fiduciary duty, gross mismanagement, and corporate waste, and against certain of Facebook's directors for unjust enrichment, misappropriation, and violations of the California Corporations Code, and seeking from each defendant contribution and indemnification in connection with Facebook's $16+ billion initial public offering ("IPO") on May 18, 2012, in which three defendants collectively sold $3.9+ billion of their company shares. Plaintiff exclusively alleged violations of California law. The complaint sought injunctive relief and damages for Facebook, including punitive damages, against Defendants arising out of their selling and/or aiding and abetting others in selling stock while in possession of material, non-public information belonging to Facebook, and for exposing Facebook to potential criminal and civil liability.

Defendants removed the instant case and two related cases filed in California state court to the Northern District of California. The cases were subsequently transferred to the Southern District of New York. Plaintiffs in all three cases moved to remand their cases to state court, arguing that the district court lacked subject matter jurisdiction over the actions. Defendants thereafter filed a motion to dismiss all three state court cases, as well as a fourth shareholder derivative case which had been filed in the Southern District of New York.

<u>The Result Below</u>

The district court granted in part defendants' motion to dismiss and thus denied plaintiffs' motions to remand as moot. The district court first determined that district courts are granted

considerable leeway in resolving "threshold" issues such as venue and justiciability (including the ripeness and standing issues raised by defendants) before addressing jurisdiction. The district court further found that procedural convenience and judicial economy were grounds for considering the threshold issues in advance of the jurisdictional issues, as even if the state cases (including the instant case) were remanded, the remaining federal derivative case presented the same venue and justiciability issues as the state cases, thus risking inconsistent rulings and duplication of judicial efforts.

Proceeding to address the threshold issues, the court first found that dismissal was not warranted on the basis of improper venue. The court found that the forum selection clause adopted by Facebook, which required actions to be brought in Delaware state court, was not filed with the Delaware Secretary of State until after plaintiffs had purchased shares in the company, and thus was not enforceable as to their claims.

The court next found that plaintiffs did not have standing to pursue their derivative claims because 1) they did not own shares in the company at the time of the alleged wrongdoing and 2) they did not adequately plead that demand on the board of Facebook would have been futile prior to filing their lawsuits. The court found that the wrongdoing alleged by the plaintiffs was founded in material misstatements and omissions in registration statements and other materials filed with the SEC in advance of the IPO, that plaintiffs purchased their shares in the IPO itself, and thus that plaintiffs could not demonstrate contemporaneous ownership of Facebook shares at the time of the wrongdoing. The court further found that the Second Circuit, unlike certain jurisdictions, does not recognize the "continuing wrong" doctrine, which would potentially have allowed plaintiffs to pursue claims based on wrongdoing that began before the date of their stock ownership.

As to demand futility, the court found, after a fact-intensive inquiry, that plaintiffs failed to allege sufficient particularized facts to show that at least a majority of the defendants were either disinterested or independent.  Specifically, the court found that plaintiffs failed to adequately allege that defendants were in possession of material nonpublic information that they used in selling their stock, that defendant Zuckerberg dominated the board, that certain board members had entangling personal and business relationships that could have clouded their ability to act solely in the best interests of Facebook, or that the members of the Audit Committee faced a substantial likelihood of liability.

Finally, the court addressed defendants' ripeness challenge, finding that dismissal was appropriate on this ground as well.  The court determined that plaintiffs had alleged only future or potential damages to Facebook, finding that the claims of damages were contingent on the outcome of the pending securities lawsuit against Facebook, and thus that plaintiffs' claims were not ripe.

The district court granted plaintiffs leave to replead.  The parties thereafter entered into a stipulation staying their proceedings pending the outcome of the securities class action suit.  On April 17, 2014, the three original state court plaintiffs, as well as an additional federal derivative plaintiff, entered into a stipulation with defendants, consenting to entry of judgment against them based on the court's prior dismissal order.  Judgment was entered against plaintiff Levy on April 22, 2014.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE FACEBOOK, INC. IPO SECURITIES
& DERIVATIVE LITIGATION

No. 1:12-md-02389-RWS

_____

LIDIA LEVY, Derivatively on Behalf of
FACEBOOK, INC.,

                      Plaintiff,

    vs.

MARK ZUCKERBERG, MARC L.
ANDREESSEN, ERSKINE B. BOWLES,
JAMES W. BREYER, DONALD E.
GRAHAM, REED HASTINGS, SHERYL K.
SANDBERG, PETER A. THIEL, DAVID
EBERSMAN, CIPOLA HERMAN,
MORGAN STANLEY & CO. LLC, J.P.
MORGAN SECURITIES LLC and
GOLDMAN, SACHS & CO.,

                      Defendants,

    -  and –

FACEBOOK, INC., a Delaware corporation,

                  Nominal Defendant.

_____

**<u>NOTICE OF APPEAL</u>**

PLEASE TAKE NOTICE that Lidia Levy, Derivatively on behalf of Facebook, Inc. ("Plaintiff") appeals to the United States Court of appeals for the Second Circuit Court of appeals from: (1) the District Court's judgments entered on April 22, 2014 and April 23, 2014; and (2) the District Court's opinion and order granting Defendants' motions to dismiss entered February 12, 2013. This appeal is taken from the entirety of the Opinion and Judgment and each and every aspect thereof.

Dated: April 28, 2014

Respectfully submitted,

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP

/s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
Email: jguglielmo@scott-scott.com

GAINEY McKENNA & EGLESTON
Gregory M. Egleston, Esq.
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
E-mail: egleston@gme-law.com

*Counsel for Plaintiff Lydia Levy*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system upon all counsel of record on April 28, 2014.

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP

/s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
Email: jguglielmo@scott-scott.com

*Counsel for Plaintiff Lydia Levy*

STAYED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:12-md-02389-RWS

In re: Facebook, Inc., IPO Securities and Derivative Litigation
Assigned to: Judge Robert W. Sweet
Related Cases: 1:12-cv-07531-RWS
               1:12-cv-04054-RWS
               1:12-cv-04081-RWS
               1:12-cv-04099-RWS
               1:12-cv-04131-RWS
               1:12-cv-04150-RWS
               1:12-cv-04156-RWS
               1:12-cv-04157-RWS
               1:12-cv-04184-RWS
               1:12-cv-04194-RWS
               1:12-cv-04200-RWS
               1:12-cv-04201-RWS
               1:12-cv-04215-RWS
               1:12-cv-04252-RWS
               1:12-cv-04291-RWS
               1:12-cv-04312-RWS
               1:12-cv-04315-RWS
               1:12-cv-04332-RWS
               1:12-cv-04360-RWS
               1:12-cv-04362-RWS
               1:12-cv-04403-RWS
               1:12-cv-04551-RWS
               1:12-cv-04600-RWS
               1:12-cv-04648-RWS
               1:12-cv-07815-RWS
               1:12-cv-04716-RWS
               1:13-cv-04016-RWS
               1:12-cv-04763-RWS
               1:12-cv-04777-RWS
               1:12-cv-07542-RWS
               1:12-cv-07544-RWS
               1:12-cv-07546-RWS

Date Filed: 10/05/2012
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

1:12-cv-07548-RWS
1:12-cv-07550-RWS
1:12-cv-07552-RWS
1:12-cv-07543-RWS
1:12-cv-07545-RWS
1:12-cv-07547-RWS
1:12-cv-07549-RWS
1:12-cv-07551-RWS
1:12-cv-07553-RWS
1:12-cv-07587-RWS
1:12-cv-07586-RWS
1:12-cv-07811-RWS
1:12-cv-07812-RWS
1:12-cv-07813-RWS
1:12-cv-08040-RWS
1:12-cv-09308-RWS
1:13-cv-01999-RWS
1:13-cv-02830-RWS
1:13-cv-02244-RWS

Cause: 28:1332 Diversity-Personal Injury

| Date Filed | # | Docket Text |
|---|---|---|
| 10/04/2012 | 1 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER IN ORDER FROM THE MDL PANEL... transferring this action from the United States District Court - that pursuant to 28 U.S.C. 1407, the actions listed on the attached schedule A and pending in the District of New York (California and Florida), and the same hereby are, transferred to the Southern District of New York, with the consent of that court, assigned to the Honorable Judge Robert W. Sweet, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A. (Signed by MDL Panel on 10/4/2012) (sjo) (Entered: 10/09/2012) |
| 10/04/2012 | | Magistrate Judge Gabriel W. Gorenstein is so designated. (sjo) (Entered: 10/09/2012) |
| 10/04/2012 | | CASES ORIGINATING FROM THE SOUTHERN DISTRICT OF NEW YORK: 1:12cv-4054 (RWS)1:12-cv-4081(RWS), 1:12-cv-4099(RWS),1:12-cv-4131(RWS),1:12-cv-4150(RWS),1:12-cv-4156(RWS), 1:12-cv-4157(RWS), 1:12-cv-4184(RWS), 1:12-cv-4194(RWS), 1:12-cv-4200(RWS), 1:12-cv-4201(RWS), 1:12-cv-4215(RWS), 1:12-cv-4252(RWS), 1:12-cv-4291(RWS), 1:12-cv-4312(RWS), 1:12-cv-4315(RWS), 1:12-cv-4332(RWS), 1:12-cv-4360(RWS), 1:12-cv-4362(RWS), 1:12-cv-4403(RWS), 1:12-cv-4551(RWS), 1:12-cv-4600(RWS), 1:12-cv-4648(RWS), 1:12-cv-4716(RWS), 1:12-cv-4763(RWS), 1:12-cv-4777(RWS). (sjo) (Entered: 10/09/2012) |

| 10/04/2012 | | Case Designated ECF. (sjo) (Entered: 10/09/2012) |
|---|---|---|
| 10/10/2012 | 2 | PRACTICE & PROCEDURE ORDER UPON TRANSFER PURSUANT TO 28 U.S.C. § 1407: This Order shall govern the practice and procedure in those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation (the "MDL Panel) pursuant to its Order of October 4, 2012, as well as all related actions originally filed in this Court or transferred or removed to this Court. Motions due by 11/14/2012. Responses due by 11/28/2012. Replies due by 12/5/2012. Status Conference set for 12/12/2012 at 12:00 PM in Courtroom 18C, United States Courthouse, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet. All other matters, including various pretrial issues, will be discussed at the initial conference which shall be scheduled once liaison and lead counsel are designated and approved. (Signed by Judge Robert W. Sweet on 10/10/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(ft) (Entered: 10/10/2012) |
| 10/18/2012 | 3 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER IN ORDER FROM THE MDL PANEL (CTO-1)transferring this action from the United States District Court - that pursuant to 28 U.S.C. 1407, the actions listed on the attached schedule A and pending in the District of California and District of Columbia, and the same hereby are, transferred to the Southern District of New York, with the consent of that court, assigned to the Honorable Judge Robert W. Sweet, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A. (Signed by MDL Panel on 10/18/2012) (sjo) (Entered: 10/18/2012) |
| 10/26/2012 | 4 | ORDER: All motions pending as of the date of this Order in any of the actions transferred to this Court by the MDL Panel or removed to this Court are hereby denied without prejudice. Any party may file or refile any motion once liaison and lead counsel are designated and approved. (Signed by Judge Robert W. Sweet on 10/25/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(lmb) (Entered: 11/01/2012) |
| 11/05/2012 | 5 | PRE-CONFERENCE STATEMENT. Document filed by Lawrence Corneck.Filed In Associated Cases: 1:12-md-02389-RWS et al.(Feffer, Joel) (Entered: 11/05/2012) |
| 11/05/2012 | 6 | BRIEF re: (54 in 1:12-cv-04054-RWS, 31 in 1:12-cv-04201-RWS, 22 in 1:12-cv-04315-RWS, 20 in 1:12-cv-04716-RWS, 25 in 1:12-cv-04600-RWS, 23 in 1:12-md-02389-RWS, 27 in 1:12-cv-04403-RWS, 21 in 1:12-cv-04200-RWS) Scheduling Order,,, *Designation of Lead Counsel for NASDAQ Negligence Parties*. Document filed by Meredith Bailey, Dmitri Bougakov, Ryan Cefalu, Lorrain Chin, Atish Gandhi, Phillip Goldberg, Eric Hamrick, Steve Jarvis, Joe Johnson, Nuhket Kayahan, David Kenton, Dennis Kuhn, Benjamin Levine, Katerhine Loiacono, Crystal McMahon, George Michalitsianos, Randy Teresa Mielke, Jacinto Rivera, Faisal Sami, Sanjeev Sharma, Colin Suzman. (Attachments: # 1 Exhibit Declaration of Michael McLellan, # 2 Exhibit Exhibit 1 to McLellan Declaration, # 3 Exhibit Exhibit 2 to McLellan Declaration, # 4 Text of Proposed Order, # 5 Proof of Service)Filed In Associated Cases: 1:12-md-02389-RWS et al.(McLellan, Michael) (Entered: 11/05/2012) |
| 11/05/2012 | 7 | ORDER: As per the Practice and Procedure Order filed on October 10, 2012 and in consideration of the parties' letters to the Court, a pre-trial conference to determine the |

| | | briefing schedule and resolve the appointment of plaintiffs' lead counsel is set for 11/7/2012 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet. (Signed by Judge Robert W. Sweet on 11/5/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(cd) (Entered: 11/05/2012) |
|---|---|---|
| 11/06/2012 | 8 | NOTICE OF APPEARANCE by Joseph Peter Guglielmo on behalf of Lidia Levy (Guglielmo, Joseph) (Entered: 11/06/2012) |
| 11/06/2012 | 9 | NOTICE OF APPEARANCE by Gregory M. Egleston on behalf of Lidia Levy (Egleston, Gregory) (Entered: 11/06/2012) |
| 11/06/2012 | 10 | NOTICE OF APPEARANCE by Rebecca M Katz on behalf of Employees Retirement System of the Government of the Virgin Islands, KBC Asset Management NV (Katz, Rebecca) (Entered: 11/06/2012) |
| 11/06/2012 | 11 | NOTICE OF APPEARANCE by Eric James Belfi on behalf of Banyan Capital Master Fund Ltd., Fresno County Employees' Retirement Association, Institutional Investor Group, North Carolina Department of State Treasurer (Belfi, Eric) (Entered: 11/06/2012) |
| 11/06/2012 | 12 | NOTICE OF APPEARANCE by Christopher J. Keller on behalf of Banyan Capital Master Fund Ltd., Fresno County Employees' Retirement Association, Institutional Investor Group, North Carolina Department of State Treasurer (Keller, Christopher) (Entered: 11/06/2012) |
| 11/06/2012 | 13 | NOTICE OF APPEARANCE by Michael Walter Stocker on behalf of Banyan Capital Master Fund Ltd., Fresno County Employees' Retirement Association, Institutional Investor Group, North Carolina Department of State Treasurer (Stocker, Michael) (Entered: 11/06/2012) |
| 11/07/2012 | 14 | NOTICE OF APPEARANCE by Susan Elisabeth Engel on behalf of Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, David A. Ebersman, Facebook, Inc., Donald E. Graham, Reed Hastings, David M. Spillane, Mark Zuckerberg, Marc L. Andreesen, Sheryl K. Sandberg, Peter A. Thiel, David E. (sic) Ebersman, Facebook, Inc., Facebook, Inc., Mark E. Zuckerberg, Facebook Inc., Mark Zukerburg (sic), David Ebersman, Facebook, Inc., Marc L Andreessen, David E. (sic) Ebersman, Peter Thiel, James W. Bryer Filed In Associated Cases: 1:12-md-02389-RWS et al.(Engel, Susan) (Entered: 11/07/2012) |
| 11/07/2012 | | Minute Entry for proceedings held before Judge Robert W. Sweet: Initial Pretrial Conference held on 11/7/2012. (ja) (Entered: 11/13/2012) |
| 11/08/2012 | 15 | ORDER: As set forth in the pre-trial conference held at noon on Wednesday, November 7, 2012, a hearing will be held to resolve outstanding issues pertaining to the appointment of plaintiffs' lead counsel in the Securities Act actions and the NASDAQ actions on noon on Wednesday, November 14, 2012 in Courtroom 18C. As set forth in the pre-trial conference held at noon on Wednesday, November 7, 2012, a hearing will be held to resolve outstanding issues pertaining to the derivatives actions, including motions to remand1 and will be heard on Wednesday, December 12, 2012, in Courtroom 18C. The |

| | | |
|---|---|---|
| | | briefing schedule is outlined in Section VII, (B) (ii) of the Practice & Procedure Order Upon Transfer Pursuant to 28 U.S.C. 1407 dated October 10, 2012., ( Status Conference set for 11/14/2012 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge Robert W. Sweet on 11/7/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(lmb) (Entered: 11/08/2012) |
| 11/09/2012 | 16 | NOTICE OF APPEARANCE by David Kessler on behalf of Banyan Capital Master Fund Ltd. (Kessler, David) (Entered: 11/09/2012) |
| 11/12/2012 | 17 | NOTICE OF APPEARANCE by James W. Johnson on behalf of Arkansas Teacher Retirement System, Banyan Capital Master Fund Ltd., Fresno County Employees' Retirement Association, Institutional Investor Group, North Carolina Department of State Treasurer (Johnson, James) (Entered: 11/12/2012) |
| 11/12/2012 | 18 | NOTICE OF APPEARANCE by Thomas A. Dubbs on behalf of Arkansas Teacher Retirement System, Banyan Capital Master Fund Ltd., Fresno County Employees' Retirement Association, Institutional Investor Group, North Carolina Department of State Treasurer (Dubbs, Thomas) (Entered: 11/12/2012) |
| 11/12/2012 | 19 | MOTION for Naumon A. Amjed to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7969129. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Banyan Capital Master Fund Ltd.. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Amjed, Naumon) (Entered: 11/12/2012) |
| 11/13/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 19 MOTION for Naumon A. Amjed to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7969129. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 11/13/2012) |
| 11/13/2012 | 20 | ENDORSED LETTER addressed to Judge Robert W. Sweet from Andrew B. Clubok dated 11/12/2012 re: Facebook respectfully requests permission to file a forty-page omnibus motion to dismiss the five derivative suits on threshold grounds. ENDORSEMENT: So ordered. (Signed by Judge Robert W. Sweet on 11/13/2012) (lmb) (Entered: 11/13/2012) |
| 11/14/2012 | 21 | MOTION to Remand to State Court. Document filed by Lidia Levy.(Guglielmo, Joseph) (Entered: 11/14/2012) |
| 11/14/2012 | 22 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Support re: 21 MOTION to Remand to State Court. Document filed by Lidia Levy. (Attachments: # 1 Affidavit Joseph P. Guglielmo, # 2 Exhibit A, # 3 Exhibit B) (Guglielmo, Joseph) Modified on 11/15/2012 (ldi). (Entered: 11/14/2012) |
| 11/14/2012 | 23 | MOTION to Dismiss *Derivative Complaints Pursuant to Fed. R. Civ. P. 12(B)(1), 12(B)(3), 12(B)(6), and 23.1.* Document filed by Facebook, Inc., Facebook Inc., |

| | | Facebook, Inc., Facebook, Inc.. Responses due by 11/28/2012Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 11/14/2012) |
|---|---|---|
| 11/14/2012 | 24 | MEMORANDUM OF LAW in Support *of Threshold Motion to Dismiss Derivative Complaints Pursuant to Fed. R. Civ. P. 12(B)(1), 12(B)(3), 12(B)(6), and 23.1.* Document filed by Facebook, Inc., Facebook Inc., Facebook, Inc., Facebook, Inc.. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 11/14/2012) |
| 11/14/2012 | 25 | DECLARATION of Andrew B. Clubok in Support. Document filed by Facebook, Inc., Facebook Inc., Facebook, Inc., Facebook, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 11/14/2012) |
| 11/14/2012 | 26 | MOTION to Remand to State Court. Document filed by William Cole, Hal Hubuschman.(Sanders, Shane) (Entered: 11/14/2012) |
| 11/14/2012 | 27 | DECLARATION of Shane P. Sanders in Support re: 26 MOTION to Remand to State Court.. Document filed by William Cole, Hal Hubuschman. (Attachments: # 1 Exhibit A) (Sanders, Shane) (Entered: 11/14/2012) |
| 11/14/2012 | 28 | MEMORANDUM OF LAW in Support re: 26 MOTION to Remand to State Court.. Document filed by William Cole, Hal Hubuschman. (Sanders, Shane) (Entered: 11/14/2012) |
| 11/14/2012 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Joseph Peter Guglielmo to RE-FILE Document 22 Memorandum of Law in Support of Motion. ERROR(S): Supporting documents must be filed separately, each receiving their own document number. Declaration in Support of Motion is found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 11/15/2012) |
| 11/14/2012 | | Minute Entry for proceedings held before Judge Robert W. Sweet: Motion Hearing held on 11/14/2012 re: motion for appointment for lead counsel held. (cd) (Entered: 11/19/2012) |
| 11/15/2012 | 29 | DECLARATION of Joseph P. Guglielmo in Support re: 21 MOTION to Remand to State Court.. Document filed by Lidia Levy. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Guglielmo, Joseph) (Entered: 11/15/2012) |
| 11/16/2012 | 30 | ENDORSED LETTER addressed to Judge Robert W. Sweet from Todd Kammerman dated 11/14/2012 re: I, along with Sanford P. Dumain, Lori G. Feldman, and Andrei Rado of Milberg LLP, request to be permitted to withdraw as counsel of record for plaintiffs. ENDORSEMENT: So ordered. (Signed by Judge Robert W. Sweet on 11/15/2012) Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04201-RWS(cd) (Entered: 11/19/2012) |

| | | |
|---|---|---|
| 11/19/2012 | 31 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/7/2012 before Judge Robert W. Sweet. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/13/2012. Redacted Transcript Deadline set for 12/26/2012. Release of Transcript Restriction set for 2/22/2013.Filed In Associated Cases: 1:12-md-02389-RWS et al.(Rodriguez, Somari) (Entered: 11/19/2012) |
| 11/19/2012 | 32 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/7/12 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...Filed In Associated Cases: 1:12-md-02389-RWS et al.(Rodriguez, Somari) (Entered: 11/19/2012) |
| 11/19/2012 | 33 | ORDER: various Plaintiffs' motions to remand will be heard on Wednesday, December 12, 2012, at 10 A.M. Courtroom 18C. The briefing schedule is outlined in Section VII, (B) (ii) of the Practice & Procedure Order Upon Transfer Pursuant to 28 U.S.C. 1407 dated October 10, 2012. In addition, as set forth in the pre trial conference held at noon on Wednesday, November 7, 2012, a hearing will be held to resolve outstanding issues pertaining to the derivatives actions on Wednesday, December 12, 2012, at 10 A.M. in Courtroom 18C. The briefing schedule is outlined in Section VII, (B) (ii) of the Practice & Procedure Order Upon Transfer Pursuant to 28 U.S.C. Sect. 1407 dated October 10, 2012. (Signed by Judge Robert W. Sweet on 11/19/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(mt) (Entered: 11/19/2012) |
| 11/19/2012 | | Set/Reset Hearings: Remand Hearing set for 12/12/2012 at 10:00 AM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet. Status Conference set for 12/12/2012 at 10:00 AM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet. Associated Cases: 1:12-md-02389-RWS et al.(mt) (Entered: 11/19/2012) |
| 11/28/2012 | 34 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Opposition *to Defendant Facebook, Inc.'s Threshhold Motion to Dismiss the Derivative Complaints Pursuant to Fed. R. Civ. P. 12(b)(\*), 12(b)(3), 12(b)(6), and 23.1.* Document filed by Edward Childs. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(Linkh, Gregory) Modified on 11/29/2012 (ldi). (Entered: 11/28/2012) |
| 11/28/2012 | 35 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** DECLARATION of Gregory Linkh in Opposition. Document filed by Edward Childs. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(Linkh, Gregory) Modified on 11/29/2012 (ldi). (Entered: 11/28/2012) |
| 11/28/2012 | 36 | MEMORANDUM OF LAW in Opposition *to Nominal Defendant Facebook Inc's Motion to Dismiss.* Document filed by Lidia Levy. (Guglielmo, Joseph) (Entered: |

| | | 11/28/2012) |
|---|---|---|
| 11/28/2012 | 37 | DECLARATION of Joseph P. Guglielmo in Opposition. Document filed by Lidia Levy. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Guglielmo, Joseph) (Entered: 11/28/2012) |
| 11/28/2012 | 38 | MEMORANDUM OF LAW in Opposition re: (26 in 1:12-md-02389-RWS) MOTION to Remand to State Court., (21 in 1:12-md-02389-RWS) MOTION to Remand to State Court.. Document filed by Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, David A. Ebersman, Facebook, Inc., Donald E. Graham, Reed Hastings, Sheryl K. Sandberg, David M. Spillane, Peter A. Thiel, Mark Zuckerberg, Marc L Andreessen, Facebook Inc., James W. Bryer, Facebook, Inc.. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 11/28/2012) |
| 11/28/2012 | 39 | DECLARATION of Richard D. Bernstein in Opposition re: (26 in 1:12-md-02389-RWS) MOTION to Remand to State Court., (21 in 1:12-md-02389-RWS) MOTION to Remand to State Court.. Document filed by Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, David A. Ebersman, Facebook, Inc., Donald E. Graham, Reed Hastings, Sheryl K. Sandberg, David M. Spillane, Peter A. Thiel, Mark Zuckerberg, Marc L Andreessen, Facebook Inc., James W. Bryer, Facebook, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D (1 of 2), # 5 Exhibit D (2 of 2), # 6 Exhibit E (1 of 2), # 7 Exhibit E (2 of 2), # 8 Exhibit F)Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 11/28/2012) |
| 11/28/2012 | 40 | DECLARATION of Shane P. Sanders in Opposition. Document filed by William Cole, Hal Hubuschman. (Sanders, Shane) (Entered: 11/28/2012) |
| 11/28/2012 | 41 | MEMORANDUM OF LAW in Opposition *to Motion to Dismiss*. Document filed by William Cole, Hal Hubuschman. (Sanders, Shane) (Entered: 11/28/2012) |
| 11/28/2012 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Gregory Bradley Linkh to RE-FILE Document (24 in 1:12-cv-04156-RWS, 35 in 1:12-md-02389-RWS) Declaration in Opposition to Motion, (34 in 1:12-md-02389-RWS, 23 in 1:12-cv-04156-RWS) Memorandum of Law in Opposition to Motion. ERROR(S): Wrong case number indicated on documents (for civil case). Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(ldi) (Entered: 11/29/2012)** |
| 11/29/2012 | 42 | MEMORANDUM OF LAW in Opposition *to Defendants' Motion to Dismiss*. Document filed by Edward Childs. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(Linkh, Gregory) (Entered: 11/29/2012) |
| 11/29/2012 | 43 | DECLARATION of Gregory Linkh in Opposition. Document filed by Edward Childs. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(Linkh, Gregory) (Entered: 11/29/2012) |
| 11/29/2012 | 44 | ENDORSED LETTER addressed to Judge Robert W. Sweet from Andrew B. Clubok |

| | | |
|---|---|---|
| | | dated 11/27/2012 re: Joint request by Facebook and the Derivative Plaintiffs to extend the page limit to 35 pages for Facebook's consolidated remand opposition and to forty pages for opposition to Facebook's consolidated motion to dismiss. ENDORSEMENT: So ordered. (Signed by Judge Robert W. Sweet on 11/28/2012) (cd) Modified on 12/4/2012 (cd). (Entered: 11/29/2012) |
| 12/04/2012 | 45 | MOTION for Mark R. Rosen to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Edward Childs. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Rosen, Mark) (Entered: 12/04/2012) |
| 12/04/2012 | 46 | CERTIFICATE OF SERVICE of Motion for Pro Hac Vice served on All Counsel of Record on December 4, 2012. Document filed by Edward Childs. (Rosen, Mark) (Entered: 12/04/2012) |
| 12/04/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 45 MOTION for Mark R. Rosen to Appear Pro Hac Vice. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/04/2012) |
| 12/05/2012 | 47 | ENDORSED LETTER addressed to Judge Robert W. Sweet from Andrew B. Clubok dated 12/4/2012 re: Plaintiffs filed three separate opposition briefs totaling 73 pages. In order to respond to all three of these briefs in one reply brief, Facebook respectfully requests an extension of the page limit to forty pages. We have conferred with counsel for the Derivative Plaintiffs, who do not oppose this request. Relatedly, Plaintiffs Cole and Levy filed separate remand motions. With this Court's permission, Facebook responded with a thirty-five page opposition brief. Plaintiff Cole respectfully requests an extension of the page limit to forty pages for his reply brief. Facebook does not oppose this request ENDORSEMENT: So Ordered. (Signed by Judge Robert W. Sweet on 12/5/2012) (js) (Entered: 12/05/2012) |
| 12/05/2012 | 48 | REPLY MEMORANDUM OF LAW in Support re: 21 MOTION to Remand to State Court.. Document filed by Lidia Levy. (Guglielmo, Joseph) (Entered: 12/05/2012) |
| 12/05/2012 | 49 | REPLY MEMORANDUM OF LAW in Support re: 26 MOTION to Remand to State Court.. Document filed by William Cole, Hal Hubuschman. (Sanders, Shane) (Entered: 12/05/2012) |
| 12/05/2012 | 50 | REPLY MEMORANDUM OF LAW in Support *of Threshold Motion to Dismiss Derivative Complaints.* Document filed by Facebook, Inc., Facebook Inc., Facebook, Inc., Facebook, Inc.. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 12/05/2012) |
| 12/05/2012 | 51 | DECLARATION of Andrew B. Clubok in Support. Document filed by Facebook, Inc., Facebook Inc., Facebook, Inc., Facebook, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS(Clubok, Andrew) (Entered: 12/05/2012) |

| 12/06/2012 | 52 | OPINION & ORDER: #102654 Based upon the conclusions set forth above the Securities Actions and the NASDAQ Actions are each separately consolidated. The Institutional Investor Group is appointed lead plaintiff of the Securities Actions and its choice of co lead counsel is approved. The NASDAQ Claimant Group is appointed the lead plaintiff of the NASDAQ Actions and its choice of lead counsel is approved. The NASDAQ Negligence Parties will act as co lead plaintiff of the NASDAQ Actions and its choice of co-lead counsel is approved on a interim basis. The motions of the Eiffel Tower Group and Exchange Act Plaintiffs are denied. The parties will meet and confer with respect to a schedule for filing of consolidated complaints and attendant motions and any other preliminary issues which will be addressed in a pre trial conference at 2PM on January 23, 2013 or such other date and time agreed upon by counsel and the Court. (Signed by Judge Robert W. Sweet on 12/6/2012) Filed In Associated Cases: 1:12-md-02389-RWS et al.(cd) Modified on 12/11/2012 (jab). (Entered: 12/07/2012) |
| 12/06/2012 | | Set/Reset Hearings: Pretrial Conference set for 1/23/2013 at 02:00 PM before Judge Robert W. Sweet. Associated Cases: 1:12-md-02389-RWS et al.(cd) (Entered: 12/07/2012) |
| 12/07/2012 | 53 | MEMO ENDORSED granting (27) Motion for Mark R. Rosen to Appear Pro Hac Vice in case 1:12-cv-04156-RWS; granting (45) Motion for Mark R. Rosen to Appear Pro Hac Vice; granting [] Motion for Mark R. Rosen to Appear Pro Hac Vice in case 1:12-md-02389-RWS; granting [] Motion for Mark R. Rosen to Appear Pro Hac Vice in case 1:12-cv-04156-RWS. ENDORSEMENT: So Ordered. (Signed by Judge Robert W. Sweet on 12/7/2012) Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS(cd) (Entered: 12/07/2012) |
| 12/14/2012 | 54 | NOTICE OF APPEARANCE by Steven B. Singer on behalf of Institutional Investor Group (Singer, Steven) (Entered: 12/14/2012) |
| 12/14/2012 | 55 | NOTICE OF APPEARANCE by John James Rizio-Hamilton on behalf of Institutional Investor Group (Rizio-Hamilton, John) (Entered: 12/14/2012) |
| 12/14/2012 | 56 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER IN ORDER FROM THE MDL PANEL (CTO-2)... transferring this action from the United States District Court - that pursuant to 28 U.S.C. 1407, the actions listed on the attached schedule A and pending in the District of Texas, and the same hereby are, transferred to the Southern District of New York, with the consent of that court, assigned to the Honorable Judge Robert W. Sweet, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A. (Signed by MDL Panel on 12/14/2012) (sjo) (Entered: 12/18/2012) |
| 12/20/2012 | 57 | NOTICE OF CHANGE OF ADDRESS by Rebecca M Katz on behalf of Employees Retirement System of the Government of the Virgin Islands, KBC Asset Management NV. New Address: Motley Rice LLC, 275 Seventh Avenue, New York, NY, USA 10001, 212-577-0041. (Katz, Rebecca) (Entered: 12/20/2012) |
| 01/04/2013 | 58 | NOTICE OF CHANGE OF ADDRESS by Brian James Robbins on behalf of Khodayar Amin, William Cole, Hal Hubuschman. New Address: Robbins Arroyo LLP, |

| | | |
|---|---|---|
| | | 600 B Street, Suite 1900, San Diego, CA, USA 92101, 619-525-3990. (Robbins, Brian) (Entered: 01/04/2013) |
| 01/04/2013 | 59 | NOTICE OF CHANGE OF ADDRESS by Felipe J. Arroyo on behalf of Khodayar Amin, William Cole, Hal Hubuschman. New Address: Robbins Arroyo LLP, 600 B Street, Suite 1900, San Diego, CA, USA 92101, 619-525-3990. (Arroyo, Felipe) (Entered: 01/04/2013) |
| 01/04/2013 | 60 | NOTICE OF CHANGE OF ADDRESS by Shane Palmesano Sanders on behalf of Khodayar Amin, William Cole, Hal Hubuschman. New Address: Robbins Arroyo LLP, 600 B Street, Suite 1900, San Diego, CA, USA 92101, 619-525-3990. (Sanders, Shane) (Entered: 01/04/2013) |
| 01/04/2013 | 61 | SCHEDULING STIPULATION AND ORDER: NOW, THEREFORE, the parties to the Consolidated Securities Action hereby stipulate and agree, subject to the Court's approval, that the schedule for filing the consolidated complaint and any motion to dismiss in the Consolidated Securities Action shall be as follows: 1. Lead Plaintiffs shall file their consolidated complaint on or before February 28, 2013; 2. Defendants shall file any motion to dismiss on or before April 30, 2013; 3. Lead Plaintiffs shall file their papers in opposition to any motion to dismiss on or before June 14, 2013; and 4. Defendants shall file their reply papers on or before July 16, 2013. (Amended Pleadings due by 2/28/2013. Motions due by 4/30/2013. Responses due by 6/14/2013. Replies due by 7/16/2013). (Signed by Judge Robert W. Sweet on 1/2/2013) Filed In Associated Cases: 1:12-md-02389-RWS et al. (djc) (Entered: 01/08/2013) |
| 01/10/2013 | 65 | INTERNET CITATION NOTE: Material from decision with Internet citation re: 52 Memorandum & Opinion. (Attachments: # 1 Internet Citation) (sj) (Entered: 01/30/2013) |
| 01/14/2013 | 62 | SCHEDULING STIPULATION AND ORDER: WHEREAS, the Court's December 6, 2012 Order provided that, prior to the January 23, 2013 pre-trial conference, the parties to the Consolidated Securities Action shall meet and confer with respect to a schedule for filing a consolidated complaint and any attendant motions (see Docket No. 52 at 52); and WHEREAS, the parties to the Consolidated Securities Action have met and conferred in accordance with the Court's December 6 Order; NOW, THEREFORE, the parties to the Consolidated Securities Action hereby stipulate and agree, subject to the Court's approval, that the schedule for filing the consolidated complaint and any motion to dismiss in the Consolidated Securities Action shall be as follows: 1. Lead, Plaintiffs shall file their consolidated complaint on or before February 28, 2013; 2. Defendants shall file any motion to dismiss on or before April 30, 2013; 3. Lead Plaintiffs shall file their papers in opposition to any motion to dismiss on or before June 14, 2013; and 4. Defendants shall file their reply papers on or before July 16, 2013. ( Amended Pleadings due by 2/28/2013., Motions due by 4/20/2013., Responses due by 6/14/2013, Replies due by 7/16/2013.) (Signed by Judge Robert W. Sweet on 1/14/2013) Filed In Associated Cases: 1:12-md-02389-RWS et al.(ago) (Entered: 01/14/2013) |
| 01/18/2013 | 63 | SCHEDULING STIPULATION AND ORDER: I. Plaintiffs in the NASDAQ Actions shall file a Consolidated Amended Complaint on or before February 28, 2013 and |

|  |  |  |
|---|---|---|
|  |  | plaintiff in the Simon, Tran, and Fleming actions shall file amended complaints, if any, on or before that same day; 2. Defendants shall file any motions to dismiss on or before April 30, 2013; 3. Plaintiffs shall file their papers in opposition to any motions to dismiss on or before June 14, 2013; and 4. Defendants shall file their reply papers on or before July 16, 2013. ( Amended Pleadings due by 2/28/2013., Motions due by 4/30/2013., Responses due by 6/14/2013, Replies due by 7/16/2013.) (Signed by Judge Robert W. Sweet on 1/18/13) Filed In Associated Cases: 1:12-md-02389-RWS et al.(pl) (Entered: 01/18/2013) |
| 01/18/2013 | 64 | ORDER: that in consideration of the parties' scheduling stipulations (Docket Nos. 61 and 62) and the pending motions in the instant case, the pre-trial conference scheduled for January 23, 2013 is cancelled. The parties are requested to advise the Court of any pre-trial issues. (Signed by Judge Robert W. Sweet on 1/18/2013) Filed In Associated Cases: 1:12-md-02389-RWS et al.(pl) (Entered: 01/18/2013) |
| 02/13/2013 | 66 | OPINION AND ORDER #102911. Based upon the conclusions set forth in this Opinion and Order, the Facebook Defendants' motion to dismiss is granted in part on the grounds of standing and ripeness, and the Derivative Plaintiffs' complaints are dismissed. Having dismissed the complaints, Plaintiffs' motions to remand are denied as moot. Derivative Plaintiffs are granted leave to replead within twenty days. (Signed by Judge Robert W. Sweet on 2/12/2013). Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04156-RWS, 1:12-cv-07549-RWS, 1:12-cv-07553-RWS, 1:12-cv-07815-RWS (rjm) Modified on 2/14/2013 (rsh). (Entered: 02/13/2013) |
| 02/13/2013 | 67 | OPINION AND ORDER #102912. Based upon the conclusions set forth in this Opinion and Order, the Plaintiff's motion to remand is denied. (Signed by Judge Robert W. Sweet on 2/12/2013). Relates to 12cv6439. (rjm) Modified on 2/14/2013 (rsh). (Entered: 02/13/2013) |
| 02/22/2013 | 73 | INTERNET CITATION NOTE: Material from decision with Internet citation re: 66 Memorandum & Opinion. (Attachments: # 1 Internet Citation, # 2 Internet Citation, # 3 Internet Citation, # 4 Internet Citation, # 5 Internet Citation) (sj) (Entered: 03/19/2013) |
| 02/25/2013 | 68 | SCHEDULING STIPULATION AND ORDER: It is hereby ordered that the schedule for filing amended complaints and any motions to dismiss in the NASDAQ Actions shall be as follows: Amended Pleadings due by 4/30/2013. Motions due by 7/2/2013. Responses due by 8/27/2013 Replies due by 9/26/2013. (Signed by Judge Robert W. Sweet on 2/25/2013) Filed In Associated Cases: 1:12-md-02389-RWS et al.(js) (Entered: 02/25/2013) |
| 02/26/2013 | 69 | NOTICE OF CHANGE OF ADDRESS by Gregory M. Egleston on behalf of Lidia Levy. New Address: Gainey McKenna & Egleston, 440 Park Avenue South, 5th Fl., New York, New York, 10016, 212-983-1300. (Egleston, Gregory) (Entered: 02/26/2013) |
| 02/26/2013 | 70 | NOTICE OF CHANGE OF ADDRESS by Thomas James McKenna on behalf of Elbita Alfonso. New Address: Gainey McKenna & Egleson, 440 Park Avenue South, 5th Floor, New York, NY, 10016, 212-983-1300. Filed In Associated Cases: 1:12- |

md-02389-RWS et al.(McKenna, Thomas) (Entered: 02/26/2013)

| 02/28/2013 | 71 | CONSOLIDATED CLASS ACTION COMPLAINT against Allen & Company LLC, Marc L. Andreessen, BMO Capital Markets Corp., Barclays Capital Inc., Blaylock Robert Van LLC, James W. Breyer, C.L. King & Associates, Inc., Cabrera Capital Markets, LLC, Castleoak Securities, L.P., CitiGroup Global Market, Inc., Cowen and Company, LLC, Credit Suisse Securites (USA) LLC, Deutsche Bank Securites, Inc., E Trade Securities LLC, David A. Ebersman, Facebook, Inc., Goldman, Sachs & Co., Donald E. Graham, Reed Hastings, ITAU BBA USA Securities, Inc., J.P. Morgan Securiries LLC., Lazard Capital Markets LLC, Lebenthal & Co., LLC, Loop Capital Markets LLC, M.R. Beal & Company, Macquarie Capital (USA) Inc., Merrill Lynch Pierce Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Muriel Siebert & Co., Inc., Oppenheimer & CO. Inc., Pacific Crest Securities LLC, Piper Jaffray & Co., RBC Capital Markets LLC, Raymond James & Associates, Inc., Samuel A. Ramirez & Company, Inc., Sheryl K. Sandberg, David M. Spillane, Stifel Nicholas & Facebook (sic) Incorporated, The Williams Capital Group, L.P., Peter A. Thiel, Wells Fargo Securities, LLC, William Blair & Company L.L.C., Mark Zuckerberg with JURY DEMAND.Document filed by Mary Galvan, Fresno County Employees' Retirement Association, Jose Galvan, Banyan Capital Master Fund Ltd., Arkansas Teacher Retirement System, North Carolina Department of State Treasurer.***Certificate of Service Attached hereto. (Received in the night deposit box on 2/28/2013 at 8:07 p.m. and was received for docketing on 3/5/2013.) ***Also docketed in related civil cases listed herein. (mro) (Entered: 03/05/2013) |
| 03/14/2013 | 72 | NOTICE of Notice of Withdrawal By Michael Spatz as a Named Plaintiff. Document filed by Michael Spatz. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07586-RWS(Weintraub, Robert) (Entered: 03/14/2013) |
| 03/18/2013 | 75 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER IN ORDER FROM THE MDL PANEL... transferring this action from the United States District Court - that pursuant to 28 U.S.C. 1407, the actions listed on the attached schedule A and pending in the District of Texas, and the same hereby are, transferred to the Southern District of New York, with the consent of that court, assigned to the Honorable Judge Robert W. Sweet, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A. (Signed by MDL Panel on 3/18/2013) (sjo) (Entered: 03/20/2013) |
| 03/19/2013 | 74 | ORDER: Plaintiff's motion to remand, originally filed in the Southern District of Texas and dated December 11, 2012, will be heard will be heard at noon on Wednesday, April 10, 2013, in courtroom 18C. Any additional reply shall be submitted by April 5, 2013. ( Replies due by 4/5/2013. Motion Hearing set for 4/10/2013 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge Robert W. Sweet on 3/18/2013) Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-09308-RWS(cd) (Entered: 03/19/2013) |
| 04/02/2013 | 76 | ORDER: The previous scheduling order is hereby amended as follows: Plaintiff's motion to remand, originally filed in the Southern District of Texas and dated December 11, 2012, will be heard will be heard at noon on Wednesday, April 24, 2013, in courtroom |

| | | |
|---|---|---|
| | | 18C. All papers will be subject to the parties' stipulation, filed on March 22, 2013 (Dkt. No. 19).( Motion Hearing set for 4/24/2013 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge Laura Taylor Swain on 4/2/2013) Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-09308-RWS(cd) (Entered: 04/02/2013) |
| 04/16/2013 | 77 | MOTION to Sever. Document filed by Lawrence Corneck, Eugene Stricker. Return Date set for 5/22/2013 at 12:00 PM.Filed In Associated Cases: 1:12-md-02389-RWS et al.(Feffer, Joel) (Entered: 04/16/2013) |
| 04/16/2013 | 78 | MEMORANDUM OF LAW in Support re: (75 in 1:12-cv-07553-RWS, 137 in 1:12-cv-07545-RWS, 35 in 1:12-cv-04716-RWS, 137 in 1:12-cv-07546-RWS, 43 in 1:12-cv-04252-RWS, 31 in 1:12-cv-07813-RWS, 25 in 1:12-cv-07811-RWS, 44 in 1:12-cv-04150-RWS, 50 in 1:12-cv-07552-RWS, 40 in 1:12-cv-04600-RWS, 34 in 1:12-cv-04551-RWS, 137 in 1:12-cv-07548-RWS, 78 in 1:12-cv-04648-RWS, 46 in 1:12-cv-04099-RWS, 37 in 1:12-cv-04156-RWS, 43 in 1:12-cv-04312-RWS, 18 in 1:12-cv-08040-RWS, 138 in 1:12-cv-07543-RWS, 152 in 1:12-cv-07586-RWS, 53 in 1:12-cv-07550-RWS, 73 in 1:12-cv-07549-RWS, 43 in 1:12-cv-04184-RWS, 37 in 1:12-cv-04131-RWS, 69 in 1:12-cv-04054-RWS, 77 in 1:12-md-02389-RWS, 37 in 1:12-cv-04763-RWS, 8 in 1:13-cv-01999-RWS, 131 in 1:12-cv-07587-RWS, 47 in 1:12-cv-04332-RWS, 43 in 1:12-cv-04291-RWS, 52 in 1:12-cv-04194-RWS, 39 in 1:12-cv-04215-RWS, 34 in 1:12-cv-07812-RWS, 38 in 1:12-cv-04315-RWS, 38 in 1:12-cv-04362-RWS, 29 in 1:12-cv-07531-RWS, 22 in 1:12-cv-09308-RWS, 44 in 1:12-cv-04360-RWS, 47 in 1:12-cv-04201-RWS, 36 in 1:12-cv-04200-RWS, 42 in 1:12-cv-04403-RWS, 51 in 1:12-cv-07542-RWS, 43 in 1:12-cv-04777-RWS, 137 in 1:12-cv-07547-RWS, 92 in 1:12-cv-07815-RWS, 101 in 1:12-cv-04081-RWS, 45 in 1:12-cv-04157-RWS, 76 in 1:12-cv-07551-RWS, 54 in 1:12-cv-07544-RWS) MOTION to Sever.. Document filed by Lawrence Corneck, Eugene Stricker. Filed In Associated Cases: 1:12-md-02389-RWS et al.(Feffer, Joel) (Entered: 04/16/2013) |
| 04/18/2013 | 79 | NOTICE OF APPEARANCE by Stephen J Kastenberg on behalf of The Nasdaq Stock Market LLC, The NASDAQ OMX Group Inc, The Nasdaq Stock Market LLC, Nasdaq Stock Market, Inc., The Nasdaq OMX Group, Inc. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07531-RWS, 1:12-cv-07811-RWS, 1:12-cv-09308-RWS, 1:13-cv-01999-RWS(Kastenberg, Stephen) (Entered: 04/18/2013) |
| 04/18/2013 | 80 | NOTICE OF APPEARANCE by William A. Slaughter on behalf of The Nasdaq Stock Market LLC, The NASDAQ OMX Group Inc, The Nasdaq Stock Market LLC, Nasdaq Stock Market, Inc., The Nasdaq OMX Group, Inc. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07531-RWS, 1:12-cv-07811-RWS, 1:12-cv-09308-RWS, 1:13-cv-01999-RWS(Slaughter, William) (Entered: 04/18/2013) |
| 04/18/2013 | 81 | NOTICE OF APPEARANCE by Paul Lantieri, III on behalf of The Nasdaq Stock Market LLC, The NASDAQ OMX Group Inc, The Nasdaq Stock Market LLC, Nasdaq Stock Market, Inc., The Nasdaq OMX Group, Inc. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07531-RWS, 1:12-cv-07811-RWS, 1:12-cv-09308-RWS, 1:13-cv-01999-RWS(Lantieri, Paul) (Entered: 04/18/2013) |

| 04/18/2013 | 82 | CERTIFICATE OF SERVICE of Notices of Appearance of William A. Slaughter, Stephen J. Kastenberg, and Paul Lantieri III served on all counsel and pro se plaintiffs on April 18, 2013. Document filed by NASDAQ OMX Group, Inc., Nasdaq Stock Market, Inc., Nasdaqomx Group, Inc., The Nasdaq Stock Market L.L.C.. Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-07531-RWS, 1:12-cv-07811-RWS, 1:12-cv-09308-RWS, 1:13-cv-01999-RWS(Slaughter, William) (Entered: 04/18/2013) |
|---|---|---|
| 04/18/2013 | 83 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER IN ORDER FROM THE MDL PANEL (CTO-4) transferring this action from the United States District Court - that pursuant to 28 U.S.C. 1407, the actions listed on the attached schedule A and pending in the District of Delaware, and the same hereby are, transferred to the Southern District of New York, with the consent of that court, assigned to the Honorable Judge Robert W. Sweet, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A. (Signed by MDL Panel on 4/18/2013) (sjo) (Entered: 04/18/2013) |
| 04/22/2013 | 84 | ORDER: Lawrence Corneck and Eugene Stricker's (the "Exchange Act Plaintiffs") motion to sever their actions, dated April 16, 2013 will be heard at noon on Wednesday, May 29, 2013, in Courtroom 18C, United States Courthouse, 500 Pearl Street. All motion papers shall be served in accordance with Local Civil Rule 6.1. Set Deadlines/Hearing as to (77 in 1:12-md-02389-RWS, 39 in 1:12-cv-04215-RWS, 37 in 1:12-cv-04763-RWS) MOTION to Sever. ( Motion Hearing set for 5/29/2013 at 12:00 PM in Courtroom 18C, 500 Pearl Street, New York, NY 10007 before Judge Robert W. Sweet.) (Signed by Judge Robert W. Sweet on 4/18/2013) Filed In Associated Cases: 1:12-md-02389-RWS, 1:12-cv-04215-RWS, 1:12-cv-04763-RWS(cd) (Entered: 04/22/2013) |
| 04/23/2013 | 85 | MOTION to Remand *Matter to the Court of Chancery of the State of Delaware*. Document filed by Gaye Jones, Holly McConnaughey.(Rudman, Samuel) (Entered: 04/23/2013) |
| 04/23/2013 | 86 | MEMORANDUM OF LAW in Support re: 85 MOTION to Remand *Matter to the Court of Chancery of the State of Delaware*.. Document filed by Gaye Jones, Holly McConnaughey. (Rudman, Samuel) (Entered: 04/23/2013) |
| 04/23/2013 | 87 | DECLARATION of Samuel H. Rudman in Support re: 85 MOTION to Remand *Matter to the Court of Chancery of the State of Delaware*.. Document filed by Gaye Jones, Holly McConnaughey. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Rudman, Samuel) (Entered: 04/23/2013) |
| 04/25/2013 | 88 | ENDORSED LETTER addressed to Judge Robert W. Sweet from Andrew B. Clubok dated 4/24/2013 re: Defendants respectfully request that the Court extend the page limit for the memorandum in support of joint motion to dismiss to fifty-five pages. ENDORSEMENT: So Ordered. (Signed by Judge Robert W. Sweet on 4/25/2013) Filed In Associated Cases: 1:12-md-02389-RWS et al.(cd) (Entered: 04/25/2013) |
| 04/30/2013 | 89 | MOTION to Dismiss *Consolidated Class Action Complaint*. Document filed by Allen |

& Company LLC, Marc L. Andreesen, BMO Capital Markets Corp., Barclays Capital Inc., Blaylock Robert Van LLC, Erskine B. Bowles, James W. Breyer, C.L. King & Associates, Inc., Cabrera Capital Markets, LLC, Castleoak Securities, L.P., Citigroup Global Markets Inc., Cowen and Company, LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., ETrade Securities LLC, David A. Ebersman, Facebook, Inc., Goldman, Sachs & Co., Donald E. Graham, Reed Hastings, ITAU BBA USA Securities, Inc., J.P. Morgan Securities LLC, Lazard Capital Markets LLC, Lebenthal & Co., LLC, Loop Capital Markets LLC, M.R. Beal & Company, Macquarie Capital (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co. LLC, Muriel Seibert & Co., Inc., Oppenheimer & Co. Inc.,, Pacific Crest Securities LLC, Piper Jaffray & Co., RBC Capital Markets, LLC, Raymond James & Associates, Inc., Samuel A. Ramirez & Company, Inc., David M. Spillane, Stifel, Nicolaus & Company, Incorporated, The Williams Capital Group, L.P., Peter A. Thiel, William Blair & Company, L.L.C., Mark Zuckerberg, Marc L. Andreessen, C.L. King & Associates, Inc, Credit Suisse Securities (USA), LLC, E Trade Securities, LLC., Goldman Sachs & Co., Merrill Lynch Pierce Fenner & Smith Incorporated, Morgan Stanley & Co, LLC, Muriel Siebert & Co., Inc., Oppenheimer & Co., Inc., Barclays Capital Inc, CastleOak Securities L.P, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., E Trade Securities LLC, Goldman, Sachs & Co., JP Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Oppenheimer & Co. Inc, Piper Jaffrey & Co., Raymond James & Associates, Inc., Sheryl K. Sandberg, Wells Fargo Securities, LLC, Facebook Inc., Allen & Facebook (sic) LLC, CitiGroup Global Market, Inc., Lawrence Corneck, Cowen and Facebook (sic) LLC, Credit Suisse Securites (USA) LLC, Deutsche Bank Securites, Inc., David E. (sic) Ebersman, Facebook, Inc., Goldman Sachs & CO., Goldman, Sachs & Co., Cipora Herman, Kevin Hicks, J.P. Morgan Securiries LLC., King & Associates, Inc., Harvey Lapin, Linh Luu, M.R. Beal & Facebook (sic), Macquarie Capital (USA) Inc., Merrill Lynch, Morgan Stanley & Co, Inc., Oppenheimer & CO. Inc., Pierce Fenner & Smith Incorporated, RBC Capital Markets LLC, Samuel A. Ramirez & Facebook (sic) Inc, Jill D. Simon, Stifel Nicholas & Facebook (sic) Incorporated, Stifel, Nicolaus & Company, Inc., Uma M. Swaminathan, The Nasdaq Stock Market L.L.C., Nick E. Tran, William Blair & Company L.L.C., William Blair & Facebook (sic) LLC, Marc L Andreessen, Goldman Sachs & Co, Allen & Company, L.L.C., Credit Suisse Securities (USA) L.L.C., Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. L.L.C., RBC Capital Markets L.L.C., Wells Fargo Securities L.L.C., Deutsche Bank Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., LLC, Peter Thiel, Barclays Capital, Inc., Merrill Lynch, Pierce Fenner & Smith Incorporated, Allen & Company L.L.C., Goldman Sachs & Co., Morgan Stanley & Co.L.L.C., Macquarie Capital (USA) Inc., Oppenheimer & Co., Inc., Rick Pond, Raymond James & Associates, Inc., Stifel Nicolaus & Company, Incorporated, Deutsche Bank Securities, Inc., Lazard Capital Markets, LLC, Oppenheimer & CO., Inc., Stifel, Nicolaus & Company, Incorporated, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co. Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., C.L. King & Associates Inc, Cabrera Capital Markets LLC,

|  |  | Castleoak Securities LP, Cowen and Company LLC, Itau BBA USA Securities Inc, Lebenthal & Co LLC, Muriel Siebert & Co Inc, Oppenheimer & Co Inc, Piper Jaffray & Co, Raymond James & Associates Inc, Samuel A. Ramirez & Company Inc, Stifel Nicolaus & Company Incorporated, The Williams Capital Group LP, Wells Fargo Securities LLC, William Blair & Company LLC, Cowen & Facebook (sic) LLC, Merrill Lynch, Muriel Siebert & Co., Inc, Mark Zukerberg (sic), Jose Galvan, Robert Herpst, Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Goldman Sachs & Co., Muriel Siebert & Co., Inc., Samuel A Ramirez & Company, Inc, David Ebersman, J.P. Morgan Securities Holdings LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, David E. (sic) Ebersman, Edward Shierry, Stifel, Nicolaus & Company Incorporated, Williams Capital Group, L.P.. Responses due by 6/14/2013Filed In Associated Cases: 1:12-md-02389-RWS et al.(Clubok, Andrew) (Entered: 04/30/2013) |
| 04/30/2013 | 90 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MEMORANDUM OF LAW in Support re: (54 in 1:12-cv-07542-RWS, 43 in 1:12-cv-04215-RWS, 79 in 1:12-cv-07551-RWS, 49 in 1:12-cv-04099-RWS, 56 in 1:12-cv-07550-RWS, 46 in 1:12-cv-04312-RWS, 134 in 1:12-cv-07587-RWS, 41 in 1:12-cv-04763-RWS, 55 in 1:12-cv-04194-RWS, 47 in 1:12-cv-04360-RWS, 141 in 1:12-cv-07543-RWS, 53 in 1:12-cv-07552-RWS, 48 in 1:12-cv-04157-RWS, 37 in 1:12-cv-04551-RWS, 104 in 1:12-cv-04081-RWS, 140 in 1:12-cv-07548-RWS, 46 in 1:12-cv-04252-RWS, 46 in 1:12-cv-04777-RWS, 89 in 1:12-md-02389-RWS, 47 in 1:12-cv-04150-RWS, 46 in 1:12-cv-04291-RWS, 47 in 1:12-cv-07545-RWS, 41 in 1:12-cv-04362-RWS, 40 in 1:12-cv-04131-RWS, 46 in 1:12-cv-04184-RWS, 81 in 1:12-cv-04648-RWS, 155 in 1:12-cv-07586-RWS, 140 in 1:12-cv-07546-RWS, 50 in 1:12-cv-04332-RWS, 140 in 1:12-cv-07547-RWS, 57 in 1:12-cv-07544-RWS) MOTION to Dismiss *Consolidated Class Action Complaint*.. Document filed by Allen & Company LLC, Marc L. Andreesen, BMO Capital Markets Corp., Barclays Capital Inc., Blaylock Robert Van LLC, Erskine B. Bowles, James W. Breyer, C.L. King & Associates, Inc., Cabrera Capital Markets, LLC, Castleoak Securities, L.P., Citigroup Global Markets Inc., Cowen and Company, LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., ETrade Securities LLC, David A. Ebersman, Facebook, Inc., Goldman, Sachs & Co., Donald E. Graham, Reed Hastings, ITAU BBA USA Securities, Inc., J.P. Morgan Securities LLC, Lazard Capital Markets LLC, Lebenthal & Co., LLC, Loop Capital Markets LLC, M.R. Beal & Company, Macquarie Capital (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co. LLC, Muriel Seibert & Co., Inc., Oppenheimer & Co. Inc.,, Pacific Crest Securities LLC, Piper Jaffray & Co., RBC Capital Markets, LLC, Raymond James & Associates, Inc., Samuel A. Ramirez & Company, Inc., David M. Spillane, Stifel, Nicolaus & Company, Incorporated, The Williams Capital Group, L.P., Peter A. Thiel, William Blair & Company, L.L.C., Mark Zuckerberg, Marc L. Andreessen, C.L. King & Associates, Inc, Credit Suisse Securities (USA), LLC, E Trade Securities, LLC., Goldman Sachs & Co., Merrill Lynch Pierce Fenner & Smith Incorporated, Morgan Stanley & Co, LLC, Muriel Siebert & Co., Inc., Oppenheimer & Co., Inc., Barclays Capital Inc, CastleOak Securities L.P, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., E Trade Securities LLC, Goldman, Sachs & Co., JP Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Oppenheimer & Co. Inc, Piper Jaffrey & Co., Raymond James & |

Associates, Inc., Sheryl K. Sandberg, Wells Fargo Securities, LLC, Facebook Inc., Allen & Facebook (sic) LLC, CitiGroup Global Market, Inc., Lawrence Corneck, Cowen and Facebook (sic) LLC, Credit Suisse Securites (USA) LLC, Deutsche Bank Securites, Inc., David E. (sic) Ebersman, Facebook, Inc., A. Marcus Gerber, Goldman Sachs & CO., Goldman, Sachs & Co., Cipora Herman, Kevin Hicks, J.P. Morgan Securiries LLC., King & Associates, Inc., Harvey Lapin, Linh Luu, M.R. Beal & Facebook (sic), Macquarie Capital (USA) Inc., Merrill Lynch, Morgan Stanley & Co, Inc., NASDAQ OMX Group, Inc., Nasdaq Stock Market, Inc., Nasdaqomx Group, Inc., Oppenheimer & CO. Inc., Pierce Fenner & Smith Incorporated, RBC Capital Markets LLC, Samuel A. Ramirez & Facebook (sic) Inc, Jill D. Simon, Stifel Nicholas & Facebook (sic) Incorporated, Stifel, Nicolaus & Company, Inc., Uma M. Swaminathan, The Nasdaq Stock Market L.L.C., Nick E. Tran, William Blair & Company L.L.C., William Blair & Facebook (sic) LLC, Marc L Andreessen, Goldman Sachs & Co, Allen & Company, L.L.C., Credit Suisse Securities (USA) L.L.C., Deutsche Bank Securities Inc., Goldman, Sachs & Co., Kevin Hyms, J.P. Morgan Securities L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. L.L.C., RBC Capital Markets L.L.C., Wells Fargo Securities L.L.C., The Nasdaq Stock Market L.L.C., Deutsche Bank Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., LLC, Peter Thiel, Barclays Capital, Inc., Merrill Lynch, Pierce Fenner & Smith Incorporated, Allen & Company L.L.C., Goldman Sachs & Co., Sylvia Gregorcyzk, Morgan Stanley & Co.L.L.C., Rick Pond, Macquarie Capital (USA) Inc., Oppenheimer & Co., Inc., Raymond James & Associates, Inc., Stifel Nicolaus & Company, Incorporated, T3 Trading Group, LLC, Deutsche Bank Securities, Inc., Lazard Capital Markets, LLC, Oppenheimer & CO., Inc., Stifel, Nicolaus & Company, Incorporated, John Gregory, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., C.L. King & Associates Inc, Cabrera Capital Markets LLC, Castleoak Securities LP, Cowen and Company LLC, Itau BBA USA Securities Inc, Lebenthal & Co LLC, Muriel Siebert & Co Inc, Oppenheimer & Co Inc, Piper Jaffray & Co, Raymond James & Associates Inc, Samuel A. Ramirez & Company Inc, Stifel Nicolaus & Company Incorporated, The Williams Capital Group LP, Wells Fargo Securities LLC, William Blair & Company LLC, Cowen & Facebook (sic) LLC, Merrill Lynch, Muriel Siebert & Co., Inc, Mark Zukerburg (sic), Dennis Palkon, Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Goldman Sachs & Co., Muriel Siebert & Co, Inc., Samuel A Ramirez & Company, Inc, David Ebersman, J.P. Morgan Securities Holdings LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, David E. (sic) Ebersman, Stifel, Nicolaus & Company Incorporated, Williams Capital Group, L.P., Karen Cuker, Vernon R. DeMois, Jr., Fresno County Employees' Retirement Association. Filed In Associated Cases: 1:12-md-02389-RWS et al.(Clubok, Andrew) Modified on 5/1/2013 (ldi). (Entered: 04/30/2013)

| 04/30/2013 | 91 | DECLARATION of Andrew B. Clubok in Support re: (54 in 1:12-cv-07542-RWS, 43 in 1:12-cv-04215-RWS, 79 in 1:12-cv-07551-RWS, 49 in 1:12-cv-04099-RWS, 56 in 1:12-cv-07550-RWS, 46 in 1:12-cv-04312-RWS, 134 in 1:12-cv-07587-RWS, 41 in 1:12-cv-04763-RWS, 55 in 1:12-cv-04194-RWS, 47 in 1:12-cv-04360-RWS, 141 in |

1:12-cv-07543-RWS, 53 in 1:12-cv-07552-RWS, 48 in 1:12-cv-04157-RWS, 37 in 1:12-cv-04551-RWS, 104 in 1:12-cv-04081-RWS, 140 in 1:12-cv-07548-RWS, 46 in 1:12-cv-04777-RWS, 46 in 1:12-cv-04252-RWS, 89 in 1:12-md-02389-RWS, 47 in 1:12-cv-04150-RWS, 46 in 1:12-cv-04291-RWS, 140 in 1:12-cv-07545-RWS, 41 in 1:12-cv-04362-RWS, 46 in 1:12-cv-04184-RWS, 40 in 1:12-cv-04131-RWS, 81 in 1:12-cv-04648-RWS, 155 in 1:12-cv-07586-RWS, 140 in 1:12-cv-07546-RWS, 50 in 1:12-cv-04332-RWS, 140 in 1:12-cv-07547-RWS, 57 in 1:12-cv-07544-RWS.

MOTION to Dismiss *Consolidated Class Action Complaint*.. Document filed by Allen & Company LLC, Marc L. Andreesen, BMO Capital Markets Corp., Barclays Capital Inc., Blaylock Robert Van LLC, Erskine B. Bowles, James W. Breyer, C.L. King & Associates, Inc., Cabrera Capital Markets, LLC, Castleoak Securities, L.P., Citigroup Global Markets Inc., Cowen and Company, LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., ETrade Securities LLC, David A. Ebersman, Facebook, Inc., Goldman, Sachs & Co., Donald E. Graham, Reed Hastings, ITAU BBA USA Securities, Inc., J.P. Morgan Securities LLC, Lazard Capital Markets LLC, Lebenthal & Co., LLC, Loop Capital Markets LLC, M.R. Beal & Company, Macquarie Capital (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co. LLC, Muriel Seibert & Co., Inc., Oppenheimer & Co. Inc.,, Pacific Crest Securities LLC, Piper Jaffray & Co., RBC Capital Markets, LLC, Raymond James & Associates, Inc., Samuel A. Ramirez & Company, Inc., David M. Spillane, Stifel, Nicolaus & Company, Incorporated, The Williams Capital Group, L.P., Peter A. Thiel, William Blair & Company, L.L.C., Mark Zuckerberg, Marc L. Andreessen, C.L. King & Associates, Inc, Credit Suisse Securities (USA), LLC, E Trade Securities, LLC., Goldman Sachs & Co., Merrill Lynch Pierce Fenner & Smith Incorporated, Morgan Stanley & Co, LLC, Muriel Siebert & Co., Inc., Oppenheimer & Co., Inc., Barclays Capital Inc, CastleOak Securities L.P, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., E Trade Securities LLC, Goldman, Sachs & Co., JP Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Oppenheimer & Co. Inc, Piper Jaffrey & Co., Raymond James & Associates, Inc., Sheryl K. Sandberg, Wells Fargo Securities, LLC, Facebook Inc., Allen & Facebook (sic) LLC, CitiGroup Global Market, Inc., Lawrence Corneck, Cowen and Facebook (sic) LLC, Credit Suisse Securites (USA) LLC, Deutsche Bank Securites, Inc., David E. (sic) Ebersman, Facebook, Inc., Goldman Sachs & CO., Goldman, Sachs & Co., Cipora Herman, Kevin Hicks, J.P. Morgan Securiries LLC., King & Associates, Inc., Harvey Lapin, Linh Luu, M.R. Beal & Facebook (sic), Macquarie Capital (USA) Inc., Merrill Lynch, Morgan Stanley & Co, Inc., NASDAQ OMX Group, Inc., Nasdaq Stock Market, Inc., Nasdaqomx Group, Inc., North Carolina Department of State Treasurer, Oppenheimer & CO. Inc., Pierce Fenner & Smith Incorporated, RBC Capital Markets LLC, Samuel A. Ramirez & Facebook (sic) Inc, Jill D. Simon, Stifel Nicholas & Facebook (sic) Incorporated, Stifel, Nicolaus & Company, Inc., Uma M. Swaminathan, The Nasdaq Stock Market L.L.C., Nick E. Tran, William Blair & Company L.L.C., William Blair & Facebook (sic) LLC, Marc L Andreessen, Goldman Sachs & Co, Allen & Company, L.L.C., Credit Suisse Securities (USA) L.L.C., Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. L.L.C., RBC Capital Markets L.L.C., Wells

|  |  | Fargo Securities L.L.C., Deutsche Bank Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., LLC, Peter Thiel, Barclays Capital, Inc., Merrill Lynch, Pierce Fenner & Smith Incorporated, Allen & Company L.L.C., Goldman Sachs & Co., Morgan Stanley & Co.L.L.C., Macquarie Capital (USA) Inc., Oppenheimer & Co., Inc., Raymond James & Associates, Inc., Stifel Nicolaus & Company, Incorporated, Deutsche Bank Securities, Inc., Lazard Capital Markets, LLC, Oppenheimer & CO., Inc., Stifel, Nicolaus & Company, Incorporated, John Gregory, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., C.L. King & Associates Inc, Cabrera Capital Markets LLC, Castleoak Securities LP, Cowen and Company LLC, Itau BBA USA Securities Inc, Lebenthal & Co LLC, Muriel Siebert & Co Inc, Oppenheimer & Co Inc, Piper Jaffray & Co, Raymond James & Associates Inc, Samuel A. Ramirez & Company Inc, Stifel Nicolaus & Company Incorporated, The Williams Capital Group LP, Wells Fargo Securities LLC, William Blair & Company LLC, Cowen & Facebook (sic) LLC, Merrill Lynch, Muriel Siebert & Co., Inc, Mark Zukerburg (sic), First New York Securities L.L.C., Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Goldman Sachs & Co., Muriel Siebert & Co, Inc., Samuel A Ramirez & Company, Inc, David Ebersman, J.P. Morgan Securities Holdings LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, David E. (sic) Ebersman, Stifel, Nicolaus & Company Incorporated, Williams Capital Group, L.P., Jose and Mary Galvan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)Filed In Associated Cases: 1:12-md-02389-RWS et al.(Chubok, Andrew) (Entered: 04/30/2013) |
| 04/30/2013 | 95 | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT amending 71 Amended Complaint, against NASDAQ OMX Group, Inc., The Nasdaq Stock Market L.L.C., Robert Greifeld, Anna M. Ewing with JURY DEMAND.Document filed by T3 Trading Group, LLC, First New York Securities L.L.C., Colin Suzman, Meredith Bailey, Steve Jarvis, Avatar Securities, LLC, Faisal Sami, Phillip Goldberg, Atish Gandhi. Related document: 71 Amended Complaint, filed by Mary Galvan, Banyan Capital Master Fund Ltd., Jose Galvan, Fresno County Employees' Retirement Association, Arkansas Teacher Retirement System, North Carolina Department of State Treasurer. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(lmb) (Entered: 05/03/2013) |
| 04/30/2013 |  | SUMMONS ISSUED as to Anna M. Ewing, Robert Greifeld, NASDAQ OMX Group, Inc., The Nasdaq Stock Market L.L.C. (lmb) (Entered: 05/03/2013) |
| 05/01/2013 |  |  |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

                                    OPINION & ORDER
                                    MDL No. 12-2389

                                    Case Relates to:
                                      12 Civ. 4156
                                      12 Civ. 7549
                                      12 Civ. 7553
                                      12 Civ. 7815

-----------------------------------------X

A P P E A R A N C E S :


        Attorneys for the Plaintiff Edward Childs
        GLANCY BINKOW & GOLDBERG LLP
        77 Water Street, 7th Floor
        New York, NY 10005
        By:  Gregory Linkh, Esq.
             Michael M. Goldberg, Esq.

        MURRAY FRANK LLP
        275 Madison Avenue, Suite 801
        New York, NY 10016
        By:  Brian Philip Murray, Esq.

        BARRACK, RODOS & BACINE
        3300 Two Commerce Square
        2001 Market Street
        Philadelphia, PA 19103
        By:  Mark Robert Rosen, Esq.
             Stephen R. Basser, Esq.


        Attorneys for the Plaintiff Lidia Levy
        SCOTT & SCOTT
        405 Lexington Avenue, 40th Floor
        New York, NY 10174
        By:  Joseph P. Guglielmo, Esq.
             Deborah Clark-Weintraub, Esq.

LAW OFFICES OF SCOTT D. EGLESTON
12000 Biscayne Boulevard, Suite 220
North Miami Beach, FL 33181
By:  Scott D. Egleston, Esq.


Attorneys for Plaintiffs William Cole and
Hal Hubuschman
ROBBINS ARROYO, LLP
600 B Street, Suite 1900
San Diego, CA 92101
By:  Shane Sanders, Esq.
     Brian J. Robbins, Esq.
     Felipe J. Arroyo, Esq.
     Gina Stassi, Esq.


Attorneys for the Facebook Defendants
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
By:  Andrew B. Clubok, Esq.
     Brant Warren Bishop, Esq.
     Elizabeth L. Deeley, Esq.
     James Francis Basile, Esq.
     Susan Elisabeth Engel, Esq.

WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
By:  Richard D. Bernstein, Esq.
     Tariq Mundiya, Esq.
     Todd G. Cosenza, Esq.
     Elizabeth J. Bower, Esq.

**Sweet, D.J.**

Plaintiffs William Cole ("Cole"), Hal Hubuschman
("Hubuschman") and Linda Levy ("Levy") (collectively, the
"Plaintiffs") have moved to remand their shareholder derivative
actions (the "Removed Actions")[1] to the Superior Court of the
State of California, County of San Mateo (the "California State
Court"), pursuant to 28 U.S.C. § 1447(c). Plaintiffs originally
filed their respective complaints in the California State Court
on behalf of shareholders, charging certain officers and
directors of Facebook, Inc. ("Facebook" or the "Company")
(collectively, the "Facebook Defendants")[2] with breach of their
fiduciary duties, waste of corporate assets and unjust
enrichment. Facebook Defendants removed the Removed Actions to
the Southern District of New York and Plaintiffs now move to
remand the case back to California State Court.

Facebook Defendants contend that certain threshold

---

[1] The Derivative Actions include: Cole v. Zuckerberg, et al., No. 12-cv-7549
(removed 6/28/12); Hubuschman v. Zuckerberg, et al., No. 12-cv-7553 (removed
6/28/12); and Levy v. Zuckerberg, et al., No. 12-cv-7815 (removed 7/12/12),
which were removed from the Northern District of California; and Childs v.
Zuckerberg, et al., No. 12-cv-4156 (filed 5/24/12), which was filed in this
District.

[2] The Facebook Defendants include Facebook, Inc.; Mark Zuckerberg
("Zuckerberg"); Sheryl K. Sandberg ("Sandberg"); David A. Ebersman
("Ebersman"); David M. Spillane ("Spillane"); Marc L. Andreessen
("Andreessen"); Erskine B. Bowles ("Bowles"); James B. Breyer ("Breyer");
Donald E. Graham ("Graham"); Reed Hastings("Hastings"); and Peter A. Thiel
("Thiel").

3

grounds for dismissal should be considered before Plaintiffs'

motions to remand. Facebook Defendants have accordingly moved

to dismiss Plaintiffs' Removed Actions as well as Plaintiff

Edward Childs' ("Childs," together with the Plaintiffs, the

"Derivative Plaintiffs") derivative action[3] (together with the

Removed Actions, the "Derivative Actions") on the independent

grounds of venue, standing and ripeness, pursuant to Rules

12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil

Procedure, and the standing and demand requirements of Rule 23.1

of the Federal Rules of Civil Procedure.


Upon the facts and conclusions set forth below,

Facebook Defendants' threshold grounds for dismissal will be

resolved first, and their motion to dismiss is granted on the

basis of standing and ripeness, but denied as to venue. Having

granted Facebook Defendants' motion to dismiss, the Plaintiffs'

motions to remand are denied as moot.


## I. **Prior Proceedings and Facts**


The facts and prior proceedings underlying this action

are set out in this Court's May 9, 2012 Opinion, <u>In re Facebook</u>

---

[3] Plaintiff Childs filed his action in the Southern District of New York on
May 24, 2012, basing jurisdiction on diversity pursuant to 28 U.S.C. § 1332
(a)(2).

4

<u>IPO Secs. & Derivative Litig.</u>, 12 MDL No. 2389, --- F.R.D. ---,
2012 WL 6061862 (S.D.N.Y. Dec. 6, 2012), familiarity with which
is assumed.  Accordingly, only facts relevant to this action
will be provided below.

The Derivative Actions arise out of events in
connection with the May 18, 2012 initial public offering ("IPO")
of Facebook.

On February 1, 2012, in preparation for its IPO,
Facebook filed a Form S-1 Registration Statement with the U.S.
Securities Exchange Commission (the "SEC").  Facebook
subsequently amended the registration statement several times,
including on February 1, and April 23, 2012, before filing their
final Form S-1/A on May 16, 2012 (the "Registration Statement").[4]
The Registration Statement expressed caution about revenue
growth due to a rapid shift by users to mobile devices, stating
that,

> Based upon our experience in the second quarter of
> 2012, to date, the trend we saw in the first quarter
> of [daily active users] increasing more rapidly than
> the increase in number of ads delivered has continued.
> We believe this trend is driven in part by increased
> usage of Facebook on mobile devices where we have only

---

[4] All of Facebook's Form S-1 Disclosures, including amendments, and the SEC's
declaration of effectiveness are searchable on the SEC's EDGAR search
platform at http://www.sec.gov/edgar/searchedgar/webusers.htm.

recently begun showing an immaterial number of
sponsored stories in News Feed, and in part due to
certain pages having fewer ads per pages as a result
of product decisions.

(Clubok Decl. 11/14/12, Ex. E at 57; see also Childs Compl.

¶ 28, Levy Compl. ¶ 47).


On May 15, 2012, General Motors announced that it was

pulling its advertising business from Facebook, stating that

Facebook ads were less effective than other forms of

advertising.  (Childs Compl. ¶ 29).  According to the Derivative

Plaintiffs' complaints, despite such negative news, Facebook's

final Registration Statement stated that the Company, "in

consultation with the underwriters," had increased the IPO price

range from between $28 and $35 to between $34 and $38 per share.

(Cole Compl. ¶ 47).


In early May 2012, Facebook and its underwriters,

including three lead underwriters, Morgan Stanley & Co. LLC

("Morgan Stanley"), J.P. Morgan Securities, LLC ("JP Morgan"),

and Goldman, Sachs & Co. ("Goldman Sachs") (collectively, the

"Lead Underwriters"), participated in an IPO roadshow to provide

potential investors with information about Facebook.  On May 18,

2012, the Company filed a Form 424(b)(4) Prospectus (the

"Prospectus") with respect to the IPO (together with the

6

Registration Statement, the "Offering Documents").  The

Prospectus warned investors that,

> Growth in use of Facebook through our mobile products,
> where our ability to monetize is unproven, as a
> substitute for use on personal computers may
> negatively affect our revenue and financial results. .
> . .

> We generate a substantial majority of our revenue from
> advertising.  The loss of advertisers, or reduction in
> spending by advertisers with Facebook, could seriously
> harm our business.

(Clubok Decl. 12/5/12, Ex. 3; see also Levy Compl. ¶¶ 48, 49).

On May 18, 2012, the Company offered 421 million

shares of Facebook common stock to the public at $38.00 per

share on the NASDAQ stock exchange, thereby valuing the total

size of the IPO at more than $16 billion.

On May 19, 2012, the day after the IPO, Reuters

reported that Facebook "altered its guidance for research

earnings last week, during the road show, a rare and disruptive

move."[5]

On May 21, 2012, The New York Times reported that

---

[5] Nadia Damouni, Morgan Stanley Was A Control-Freak On Facebook IPO -- And It
May Have Royally Screwed Itself, BUSINESS INSIDER, May 19, 2012,
http://www.businessinsider.com/morgan-stanley-facebook-ipo-2012-5.

"[r]ivals involved in the Facebook underwriting process say that Morgan Stanley exerted an enormous amount of control over important aspects of the process" and "ignored some input about pricing."[6] However, the article also stated that "others involved in the underwriting say that Morgan Stanley and other advisers held thousands of conversations with potential investors on what was a fair level, and that the $38 price was justified."[7]

Then, on May 22, 2012, prior to the start of trading, Reuters revealed that the Lead Underwriters had cut their earnings forecasts for the Company prior to the IPO, but that it was "unclear whether Morgan Stanley only told its top clients about the revised view or spread the word more broadly."[8] That day, Facebook stock closed at $31.00 per share, which was 18.42% below the IPO price.

On May 22, 2012, Facebook's Restated Certification of Incorporation (the "Certificate") was filed with the Delaware

---

[6] Michael J. De La Merced, Evelyn M. Rusli and Susanne Craig, As Facebook's Stock Struggles, Fingers Start Pointing, THE NEW YORK TIMES, http://dealbook.nytimes.com/2012/05/21/as-facebooks-stock-struggles-fingers-start-pointing/.

[7] Id.

[8] Alistair Barr, Insight: Morgan Stanley Cut Facebook Estimates Just Before IPO, REUTERS, http://www.reuters.com/article/2012/05/22/us-facebook-forecasts-idUSBRE84L06920120522.

8

Secretary of State. The original certificate of incorporation (the "Original Certificate") had been filed in Delaware under the corporate name TheFacebook, Inc. on July 29, 2004. The Certificate contained some amendments to the Original Certificate, including Article IX, which contained a "Choice of Forum" provision, stating:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the sole and exclusive forum for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, (3) any action asserting a claim arising pursuant to any provision of the General Corporation Law or the corporation's Restated Certificate of Incorporation or Bylaws, (4) any action to interpret, apply, enforce or determine the validity of the corporation's Restated Certificate of Incorporation or Bylaws or (5) any action asserting a claim governed by the internal affairs doctrine, in each such case subject to said Court of Chancery having personal jurisdiction over the indispensible parties named as defendants therein. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the corporation shall be deemed to have notice of and consented to the provisions of this ARTICLE IX.

(Clubok Decl. 11/14/12, Ex. B at Art. IX).


Three out of four of the Derivative Actions were

9

originally filed in the California State Court.[9]  According to
the Derivative Plaintiffs' complaints, Facebook's executives
selectively disclosed to the Lead Underwriters that certain
negative trends were causing the Company's revenues to fall
short of earlier estimates for the second quarter of 2012 during
the roadshow.  The Lead Underwriters allegedly, in turn, reduced
their own earnings forecasts for the Company, and conveyed this
information to a select group of potential investors, but not to
the public at large.

The Derivative Plaintiffs maintain that the Facebook
Defendants failed to disclose that the Company was, at the time
of the IPO, experiencing a reduction in revenue growth due to an
increase of users of its Facebook application and website
through mobile devices rather than a traditional personal
computer.  (Cole Compl. ¶ 45, Levy Compl. ¶ 49).  They allege
that the Facebook Defendants, despite knowledge of material,
non-public facts concerning Facebook's reduction in advertising
and declining internal revenue projections, took no action to
stop the IPO from taking place.  Other allegations involve the

---

[9] Plaintiff Hubuschman originally filed his Shareholder Derivative Complaint
for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust
Enrichment in the California State Court on May 30, 2012.  Plaintiff Cole
originally filed his Shareholder Derivative Complaint for Breach of Fiduciary
Duty, Waste of Corporate Assets, and Unjust Enrichment in the California
State Court on May 31, 2012.  Plaintiff Levy originally filed her Shareholder
Derivative Complaint in the California State Court on June 13, 2012.

Offering Documents which allegedly contained improper statements and projections in violation of applicable federal securities and state laws. In addition, according to the Plaintiffs' complaints, individually-named Facebook Defendants Zuckerberg, Breyer and Thiel (the "Selling Defendants") sold more than $3.9 billion worth of their personally held Facebook stock during the IPO, with knowledge of the non-public facts concerning the Company's declining advertising revenues and reduced earnings forecasts.

On June 28, 2012, Facebook Defendants removed the Removed Actions to the Northern District of California (the "California Federal Court"), asserting that the federal court had original jurisdiction pursuant to 28 U.S.C. § 1331 and as a "covered class action" under the Securities Litigation Uniform Standards Act ("SLUSA").

The following day, Facebook Defendants and the Lead Underwriters filed a Second Amended Motion to Transfer and a Schedule of Actions, which added the Derivative Actions to the cases they sought to be transferred to the Southern District of New York by the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"). The Facebook Defendants also filed motions to stay the three Removed Actions in California

11

pending the ruling by the MDL Panel on the transfer motion.

Plaintiffs timely filed motions to remand the Removed Actions to California State Court on August 1, 2012. On August 3, 2012, Facebook Defendants filed a motion to dismiss the Removed Actions. On August 10, 2012, Plaintiffs filed an administrative motion to extend the briefing schedule and hearing on Facebook Defendants' motion to dismiss until after the stay and the remand motions were decided. The California Federal Court issued an order granting Plaintiffs' motion on August 15, 2012.

The parties briefed the stay and remand motions simultaneously. On September 11, 2012, the California Federal Court issued an order granting the stay but declined to hear the remand motions due to the MDL's pending decision on transferring the actions. The MDL Panel granted the motion to transfer to this Court on October 4, 2012, holding that "the securities and derivative actions allege that the Facebook and underwriter defendants violated federal securities laws by providing material nonpublic information to certain preferred investors, causing Facebook's stock price to decline . . . [and] [c]ertainly these actions share questions of fact." In re Facebook, 2012 WL 4748325, at *2.

12

On November 7, 2012, this Court ordered a hearing to
resolve the outstanding issues pertaining to the Derivative
Actions.  (Dkt. No. 15).  On November 14, 2012, Plaintiffs filed
the instant remand motions and Facebook Defendants filed the
instant motion to dismiss.  Plaintiffs seek to have the Removed
Actions remanded to California State Court.  Facebook Defendants
seek dismissal of all four Derivative Actions on the independent
threshold grounds of venue, standing and ripeness.  All motions
were marked fully submitted on December 12, 2012.

## I. Subject Matter Jurisdiction and The Threshold Grounds for Dismissal

A "federal court generally may not rule on the merits
of a case without first determining that it has jurisdiction
over the category of claim in suit (subject-matter jurisdiction)
and the parties (personal jurisdiction)."  Sinochem Int'l Co.
Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31, 127
S. Ct. 1184, 167 L. Ed. 2d 15 (2007).  "[T]he first and
fundamental question is that of jurisdiction . . . This question
the court is bound to ask and answer for itself, even when not
otherwise suggested, and without respect to the relation of the
parties to it."  Steel Co. v. Citizens for a Better Environment,
523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

13

The Second Circuit has reiterated that
"[j]urisdictional questions . . . should be addressed in the
first instance by the District Court."  Central States Se. & Sw.
Areas Health & Welfare Fund v. Merck-Medco Manages Care, L.L.C.,
433 F.3d 181, 203 (2d Cir. 2005).  "This is equally true in the
context of removal."  Banco De Santander Central Hispano, S.A.
v. Consalvi Int'l Inc., 425 F. Supp. 2d 421, 424 (S.D.N.Y.
2006); Bakoss v. Certain Underwriters at Lloyds of London
Issuing Certificate No. 0510135, No. 10-CV-1455(DLI)(LB), 2011
WL 4529668, at *4 (E.D.N.Y. Sept. 27, 2011) ("This obligation
extends to removal cases.").

     While Article III courts generally adhere to the
principle "that a federal court may not hypothesize subject-
matter jurisdiction for the purposes of deciding the merits,"
the Supreme Court in Ruhrgas AG v. Marathon Oil Co. declined to
prescribe a strict mandatory "sequencing of jurisdictional
issues."  526 U.S. 574, 577, 119 S. Ct. 1563, 143 L. Ed. 2d 760
(1999).  The Supreme Court noted that "[i]t is hardly novel for
a federal court to choose among threshold grounds for denying
audience to a case on the merits."  Id. at 585.  Thus, there is
"no underlying jurisdictional hierarchy," and a federal court
may adjudicate personal jurisdiction before considering a

14

challenge to subject matter jurisdiction.  Id. at 578.

Plaintiffs assert that their remand motions must be
resolved first because this Court lacks subject matter
jurisdiction under 28 U.S.C. § 1331 to decide the Facebook
Defendants' motion to dismiss.  Plaintiffs contend that "[g]iven
the ease with which the jurisdictional question can be
adjudicated by this Court," "the Court, need not, and should
not, engage in . . . [the] rigorous, complaint and plaintiff-
specific analyses of the merits of each derivative action"
necessary to resolve the other allegedly threshold issues.
(Hubuschman/ Cole Memo. - Motion to Remand at 10-11).  To
support their argument, Plaintiffs Hubuschman and Cole cite to
Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co.,
LLC, in which the court addressed a plaintiff's remand motion
before it considered the defendant's motion to transfer venue,
because it "must first decide the threshold question whether it
ha[d] subject matter jurisdiction over th[e] case."  357 F.
Supp. 2d 529, 533 (E.D.N.Y. 2004).  Plaintiffs urge that their
remand motions should similarly be addressed first.

Facebook Defendants, on the other hand, contend that
this Court should "address the threshold grounds for dismissal
that Facebook raised its Dismissal Motion before it addresses

15

Plaintiffs' Remand Motions, because the dismissal issues are logically antecedent to subject matter jurisdiction and because it is most efficient and convenient to do so." (Def. Opp. – Motion to Remand at 5). The threshold grounds for dismissal advanced by the Facebook Defendants include: (1) improper venue in violation of an exclusive Delaware forum selection provision; (2) lack of standing both for failure to make a demand on Facebook's board of directors (the "Board") and because Plaintiffs cannot allege or demonstrate that they owned Facebook shares at the time of the alleged wrongdoing; and (3) lack of ripeness because Plaintiffs' claims are expressly predicated on speculative, future harm, i.e., that Facebook will lose the civil Securities Act cases filed against it. According to the Facebook Defendants, "[a]ll of these issues can and should be heard before Plaintiffs' Remand Motions." (Id.).

As an initial matter, Studebaker and the other cases on which Plaintiffs rely for the proposition that remand must be decided first, pre-date Sinochem. (See Hubuschman/ Cole Memo. – Motion to Remand at 6-11). In Sinochem, the Supreme Court noted that "[b]oth Steel Co. and Ruhrgas recognized that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem, 549 U.S. at 431. Such threshold non-merits grounds for dismissing a claim,

16

include determinations as to whether abstention is proper,

Spargo v. New York State Com'n on Judicial Conduct, 351 F.3d 65,

74 (2d Cir. 2003), whether a foreign tribunal is a more suitable

arbiter under the forum non conveniens doctrine, Sinochem, 549

U.S. at 434-35, or the resolution of "justiciability issues

before deciding whether jurisdiction is proper."[10]  Freund v.

Rep. of France, 592 F. Supp. 2d 540, 551 (S.D.N.Y. 2008).


    In Can v. United States, for example, the Second

Circuit noted that "justiciability is also a 'threshold

question,'" which a court may consider before subject matter

jurisdiction.  14 F.3d 160, 162 n.1 (2d Cir. 1994).  The Court

stated that "where, as appears to be true here, justiciability

may be a less knotty question than jurisdiction, we think it not

inappropriate to begin by examining that question."  Id. (citing

to Bi v. Union Carbide Chemicals and Plastics Co., 984 F.2d 582

(2d Cir. 1993)) (rejecting an appeal on consideration of

standing, in advance of consideration of subject matter

jurisdiction); see also Pettus v. Morgenthau, 554 F.3d 293, 298

(2d Cir. 2009) (finding that "standing . . . is intended to be a

threshold issue at least tentatively decided at the outset of

---

[10] "Justiciability . . . is an umbrella-like term which finds beneath its
cover the various doctrines that shape and define our authority to act in
particular cases:  ripeness, standing, mootness, advisory opinion, and
political question."  Jones v. Deutsch, 715 F. Supp. 1237, 1242 (S.D.N.Y.
1989).

17

the litigation.").

In addition to justiciability, courts have found improper venue to be a non-merits-based determination. See Crotona 1967 Corp. v. Vidu Bro. Corp., No. 09-Civ-10627(NRB), 2010 WL 5299866, at *1 n.1 (S.D.N.Y. Dec. 21, 2010) (finding that "[i]mproper venue is not the type of merits-based dismissal which the Supreme Court has cautioned cannot take place before a court has assured itself of subject matter jurisdiction."); see also Shay v. Sight & Sound Sys., Inc., 668 F. Supp. 2d 80, 82 (D.D.C. 2009) (stating that "a court may decide questions of venue before addressing issues of personal or subject matter jurisdiction."); Fed. R. Civ. P. 41(b) (listing improper venue among non-merits-based dismissals).

Accordingly, precedent indicates that, in appropriate circumstances, a federal court has the discretion and leeway to dismiss a case based on certain threshold issues prior to addressing subject matter jurisdiction. See Sinochem, 549 U.S. at 431; Ruhrgas, 526 U.S. at 584-85; Can, 14 F.3d at 162 n.1. In particular, the issues of venue, derivative standing and ripeness are "the sort of 'threshold question[s]'" that "may be resolved before addressing jurisdiction." Tenet v. Doe, 544 U.S. 1, 6 n.4, 125 S. Ct. 1230, 161 L. Ed. 2d 82 (2005) (citing

18

cases). The fact that these threshold issues "may [ ] involve a brush with factual and legal issues of the underlying dispute" does not transform them into merits issues. Sinochem, 549 U.S. at 433.

In addition, procedural convenience, efficiency and judicial economy warrant consideration of the threshold dismissal issues first. As the Honorable Maxine M. Chesney of the Northern District of California ruled, the three Removed Actions and Childs "give rise to a number of common issues" including "whether the cases are improperly venued in any court other than a state court in Delaware, whether the cases are ripe to the extent they are based on a theory that Facebook, Inc. has suffered any injury by reason of defendants' alleged violation of federal securities laws, and whether plaintiffs lack standing to seek relief on behalf of Facebook, Inc." Hubuschman v. Zuckerberg, No. C-12-3366(MMC), 2012 WL 3985509, at *2 (N.D. Cal. Sept. 11, 2012).

Courts involved in multidistrict litigation have been cognizant of the numerous potential problems that may arise when such common issues are addressed. See e.g., See In re Integrated Resources, Inc., MDL No. 897, 1995 WL 234975, at *4 (S.D.N.Y. Apr. 21, 1995) ("It is a fundamental assumption of the

19

multidistrict system that having only one court sort out the
facts of complex and multi-faced transactions and occurrences
which have given rise to many competing legal claims well serves
the goal of judicial economy."); In re Allion Healthcare Inc.
Shareholders Litig., No. 5022-CC, 2011 WL 1135016, at *4 (Del.
Ch. Mar. 29, 2011) (identifying certain problems that may arise
in a multi-forum litigation including that "[d]efense counsel is
forced to litigate the same case — often identical claims — in
multiple courts. Judicial resources are wasted as judges in two
or more jurisdictions review the same documents and at times are
asked to decide the exact same motions. Worse still, if a case
does not settle or consolidate in one forum, there is the
possibility that two judges would apply the law differently or
otherwise reach different outcomes, which would then leave the
law in a confused state and pose full faith and credit problems
for all involved.").

These concerns are implicated in the instant case
because even if the removed cases were remanded, the forum
selection, standing and ripeness issues in the related case
Childs would still require adjudication. Adjudicating one case
while remanding others with "common issues" would be duplicative
and beget potentially conflicting rulings by this Court and the
California State Court. Avoiding this inefficiency and

20

inconsistency further warrants the consideration of the justiciability issues before the removal issues. See Deep v. XAC, LLC, No., 2007 WL 1308356, at *2 (W.D. Ky. May 2, 2007) (stating that "since this court's consideration of venue is inevitable, and its determination of personal jurisdiction is not, judicial economy favors deciding the motion to transfer before the motion to dismiss this action for lack of personal jurisdiction."); Fixture Specialists, Inc. v. Global Const. Co., LLC., No. 3:07-CV-570, 2007 WL 3468997, at *1-2 (E.D. Va. Nov. 14, 2007) (citing Sinochem as authority for transferring case to another federal district without considering whether it had jurisdiction over the parties); Rollenhagen v. Int'l Speedway Corp., No. 1:07-CV-818, 2007 WL 4324018, at *2-3 (W.D. Mich. Dec. 7, 2007) (citing Sinochem as authority to rule on venue issues before considering any asserted lack of jurisdiction).

Taken together, considering that district courts have the discretion to address non-merits threshold grounds for dismissal before jurisdiction and that considerations of judicial economy and consistency weigh in favor of the same, the issues concerning venue and justiciability will be considered first.

**II.  The Facebook Defendants' Motion to Dismiss is Granted**

Facebook Defendants contend that all four of the Derivative Action should be dismissed pursuant to Rules 12(b)(1), 12(b)(3), 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure. First, Facebook Defendants argue that the Derivative Actions do not belong in this Court or the California State Court, but rather that the forum selection clause mandates that the Delaware Chancery Court must exclusively resolve all corporate disputes. Second, Facebook Defendants advance that the Derivative Plaintiffs lack standing because their claims of alleged misconduct predate their purchase of shares and because they have no excuse for failing to make a demand on Facebook's Board prior to bringing suit on the Company's behalf. Third, Facebook Defendants contend that SLUSA precludes litigation of the Derivative Actions because they raise direct claims premised on the same alleged federal securities violations as the securities class actions pending before this Court and thus qualify as "covered class action[s]" that may not "be maintained in any State or Federal court by any private party." 15 U.S.C. § 77p(b). Lastly, Facebook Defendants maintain that none of the Derivative Plaintiff's claims are ripe because they seek only to recover damages that could result if Facebook is found liable in another proceeding.

22

In response, Derivative Plaintiffs insist that the forum selection clause is unenforceable as it was unilaterally adopted several days after the Company's IPO and therefore should apply only to shareholders who purchased or acquired their stock after May 22, 2012. Second, Derivative Plaintiffs contend that they have demonstrated contemporaneous ownership of their stock to establish standing and that demand would have been futile because a majority of the Board lacks independence. Third, Derivative Plaintiffs maintain that SLUSA does not apply as their actions do not constitute covered class actions under the statute. Finally, Derivative Plaintiffs contend that their claims are ripe because they allege current injuries in the form of reputational and legal costs, and not merely potential future liabilities.

These contentions raise a number of issues. As discussed above, however, only threshold issues such as venue and justiciability may be considered prior to jurisdiction. Accordingly, Facebook Defendants' venue, standing and ripeness arguments are considered below. This Court need not, and does not, reach on the other issues raised by the parties.

A) **The Applicable Standards**

The Rule 12(b)(3) and 12(b)(6) Standards

           Presumably in an abundance of caution, Facebook
Defendants have advanced arguments that the forum selection
clause is a threshold matter to be dismissed under Rule
12(b)(1), 12(b)(3) and 12(b)(6).  As the Second Circuit noted,
there is "no consensus developed as to the proper procedural
mechanism to request dismissal of a suit based upon a valid
forum selection clause." New Moon Shipping Co., Ltd. v. MAN B &
W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997).  This Circuit has
"refused to pigeon-hole" claims based on forum selection into a
particular clause of Rule 12(b). Asoma Corp. v. SK Shipping
Co., 467 F.3d 817, 822 (2d Cir. 2006).  However, "[a] forum-
selection clause does not divest a federal court of subject
matter jurisdiction, so it would not be appropriate to dismiss
this case pursuant to Rule 12(b)(1)." Chiste v. Hotels.com
L.P., 756 F. Supp. 2d 382, 298 (S.D.N.Y. 2010).  "Courts in this
Circuit appear to prefer Rule 12(b)(3) as the procedural device
used to enforce a forum selection clause." Nippon Express
U.S.A. (Ill.), Inc. v. M/V Chang Jiang Bridge, No. 06-CV-
694(PKC), 2012 WL 6019280, at *3 (S.D.N.Y. Dec. 13, 2007).  For
the sake of clarity and consistency, the Court will therefore
consider Facebook Defendants' motion pursuant to Rule 12(b)(3).

Rule 12(b)(3) provides that a defendant may move to dismiss a complaint on the grounds of improper venue. See Fed. R. Civ. P. 12(b)(3). A motion to dismiss for improper venue based on a forum selection clause is properly based on Rule 12(b)(3). See Nippon Express, 2012 WL 6019280, at *3; see also Ferraro Foods, Inc. v. M/V IZZET INCEKARA, No. 01-CV-2682(RWS), 2001 WL 940562, at *3 n.1 (S.D.N.Y. Aug. 20, 2001). A court may consider evidentiary matters outside the pleadings to resolve the jurisdictional issue. See TradeComent.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010). The burden on the party opposing enforcement of a forum selection clause "is analogous to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." New Moon Shipping, 121 F. 3d at 29. Thus, courts apply the standard of review applicable to motions to dismiss for lack of jurisdiction, taking the facts in the light most favorable to the party resisting enforcement of the forum selection clause. See id.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Cohen v. Stevanovich, 772 F. Supp. 2d 416, 423 (S.D.N.Y. 2010). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. (quoting Twombly, 550 U.S. at 555).

The Rule 23.1 Standard

26

The derivative form of action permits individual
shareholders of a corporation to bring an action on behalf of
the corporation to protect the corporation's interests from "the
misfeasance and malfeasance of faithless directors and
managers." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95,
111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) (quoting Cohen v.
Beneficial Loan Corp., 337 U.S. 541, 548, 69 S. Ct. 1221, 93 L.
Ed. 1528 (1949)). "To prevent abuse of this remedy, however,
equity courts established as a 'precondition for the suit' that
the shareholder demonstrate that 'the corporation itself had
refused to proceed after suitable demand, unless excused by
extraordinary conditions'" and satisfy the requirement of
standing. Id. (quoting Ross v. Bernhard, 396 U.S. 531, 534, 90
S. Ct. 733, 24 L. Ed. 2d 729 (1970)).

To establish standing nder Rule 23.1,[11] a shareholder's

---

[11] Rule 23.1 of the Federal Rules of Civil Procedure provides as follows:

In a derivative action brought by one or more shareholders or
members to enforce a right of a corporation or of an
unincorporated association, the corporation or association having
failed to enforce a right which may properly be asserted by it,
the complaint shall be verified and shall allege (1) that the
plaintiff was a shareholder or member at the time of the
transaction of which the plaintiff complains or that the
plaintiff's share or membership thereafter devolved on the
plaintiff by operation of law, and (2) that the action is not a
collusive one to confer jurisdiction on a court of the United
States which it would not otherwise have. The complaint shall
also allege with particularity the efforts, if any, made by the
plaintiff to obtain the action the plaintiff desires from the

27

derivative complaint must allege that the "plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1.[12]  In essence, this "contemporaneous ownership rule" is a procedural requirement that "denies a derivative plaintiff standing to challenge transactions that occurred prior to the time the plaintiff became a shareholder." Ensign Corp. v. Interlogic Trace, Inc., No. 90-CV-3497, 1990 WL 213085, at *2 (S.D.N.Y. Dec. 19, 1990).  "The policies underlying the requirement are twofold: (1) to prevent potential derivative plaintiffs from 'buying a lawsuit' by purchasing stock; and (2) to insure that derivative actions are brought by shareholders who have actually suffered injury and have an interest in the outcome of the case." Id.

---

directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

[12] Similarly, section 327 is the only provision in the Delaware General Corporation Law (the "DGC"), 8 Del. Code § 327, which addresses derivative actions.  2 Edward P. Welch, et al., Folk on the Delaware General Corporation Law § 327.1, at GCL-XIII-42 (5th ed. 2010).  It mirrors Rule 23.1 and provides: "In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law."  8 Del. Code § 327.

In addition to the standing requirement, Rule 23.1 provides that the complaint in a derivative suit must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.

## B) The Forum Selection Clause is Unenforceable as to the Derivative Plaintiffs

The Second Circuit applies a four-part test in determining whether to enforce a contractual forum selection provision.  "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The second inquiry requires the Court "to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so."  Id. (emphasis in original).  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause."  Id.  If the forum selection clause satisfies these first three criteria, "it is presumptively enforceable."  Id.

29

If a forum selection clause is prima facie valid, the
party opposing its operation "bear[s] the heavy burden of making
a 'strong showing' in order to overcome the presumption of
validity. . . ." Eslwordwide.com, Inc. v. Interland, Inc., No.
06-CV-2503, 2006 WL 1716881, at *2 (S.D.N.Y. June 21, 2006); see
also Reed & Barton Corp. v. M.V. Tokio Exp., No. 98-CIV-
1079(LAP), 1999 WL 92608, *2 (S.D.N.Y. Feb. 22, 1999).  "The
fourth, and final, step is to ascertain whether the resisting
party has rebutted the presumption of enforceability by making a
sufficiently strong showing that 'enforcement would be
unreasonable or unjust, or that the clause was invalid for such
reasons as fraud or overreaching.'"  Id. at 383-84 (quoting M/S
Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907,
32 L. Ed. 2d 513 (1972)).  To the extent that a forum selection
clause is vague or ambiguous, it will be construed against the
party who drafted it.  See JP Morgan Chase Bank, N.A. v.
Reijtenbagh, 611 F. Supp. 2d 389, 391 (S.D.N.Y. 2009); Johns
Insulation, Inc. v. Siska Const. Co., Inc., 671 F. Supp. 289,
295 (S.D.N.Y. 1987).

Article IX of Facebook's Certificate contains a forum
selection provision requiring that the Delaware Chancery Court
serve as the sole and exclusive forum for "any derivative action

30

or proceeding brought on behalf of the corporation." [13]    (Clubok

Decl. 11/14/12, Ex. B at Art. IX).    Facebook Defendants assert

that the forum selection provision is indisputably a contract

between Facebook and its shareholders because it was adopted as

a provision of Facebook's Certificate.    See M+J Savitt, Inc. v.

Savitt, No. 08-CV-8535(DLC), 2009 WL 691278, at *9 (S.D.N.Y.

Mar. 17, 2009) ("[A] company's certificate of incorporation and

by-laws in substance are a contract between the corporation and

its shareholders and among the shareholders inter se."

(citation and internal quotations omitted).    They contend that

the forum selection provision in Facebook's Certificate

satisfies all three criteria necessary to create a presumptively

enforceable forum selection provision, and that Derivative

Plaintiffs have made no showing to rebut that presumption.


        At the outset, some of the Derivative Plaintiffs claim

for the first time in their opposition papers that "Facebook did

not adopt the relevant forum selection provision until May 22,

---

[13] The Court takes judicial notice of the provisions of the Company's
certificate of incorporation for the purposes of this shareholder derivative
suit.    See, e.g., La. Mun. Police Employees Ret. Sys. v. Blankfein, No. 08-
CV-7605(LBS), 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (taking judicial
notice of exculpatory provisions applying to directors in nominal defendant's
certificate of incorporation); Ferre v. McGrath, No. 06-CV-1684, 2007 WL
1180650, at *8 (S.D.N.Y. Feb. 16, 2007) (where plaintiff "left th[e]
significant fact" of the forum provision in certificate of incorporation out
of his derivative complaint, "the court may take judicial notice of the
existence of this provision").    A Court may also take judicial notice of
required disclosure statements on file with the SEC. See In re Merrill Lynch
& Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), aff'd, 396 F.3d 161 (2d
Cir. 2005).

2012 – four days following the IPO and Plaintiff's purchases of
her Facebook shares." (Levy Opp. – Motion to Dismiss at 4);
(see also Hubuschman/ Cole Opp. – Motion to Dismiss at 10)
("Director Defendants adopted the exclusive forum clause after
the alleged wrongdoing occurred."). However, it appears that
these plaintiffs are conflating the date Facebook adopted the
forum selection clause with the date that the Company filed its
Certificate with Delaware's Secretary of State.

Under Delaware General Corporations Law § 242(b), an
amendment to a company's certificate of incorporation must first
be adopted through shareholder approval and only then may be
filed with the Secretary of State. 8 Del. Code Ann. § 242(b).
As disclosed in Facebook's SEC filings, the Company's pre-IPO
shareholders adopted the draft of the restated certificate by
written consent on April 21, 2012, nearly a month before
Derivative Plaintiffs purchased their shares. (Clubok Decl.
12/5/12, Ex. 1). That restated certificate draft included the
actual terms of the forum selection provision. (See Clubok
Decl. 11/14/12, Ex. D, Ex. 3.3 to Apr. 23, 2012 Registration
Statement). The first page of the draft also informed that "the
provisions of the Certificate of Incorporation of this
corporation as heretofore amended and/or restated, has been duly
adopted by the corporation's Board of Directors and by the

32

stockholders in accordance with Sections 242 and 245 of the
General Corporations Law of the State of Delaware, with the
approval of the corporation's stockholders having been given by
written consent without a meeting in accordance with Section 228
of the General Corporation Law of the State of Delaware." (Id.
at Ex. B). As such, the forum selection clause was adopted by
the Company's Board and shareholders prior to the IPO and
Derivative Plaintiffs cannot assert otherwise.

Turning to the four-part analysis to determine whether
to dismiss a claim based upon a forum selection clause, the
first and second steps of the analysis have been met. Contrary
to the Derivative Plaintiffs' contention that they lacked notice
of the terms of the forum provision, Facebook Defendants have
more than met the first inquiry. On February 1, 2012, Facebook
disclosed to all potential shareholders in the Prospectus, that
upon conclusion of its IPO, Facebook would amend its Certificate
to include a provision making the Delaware Chancery Court, the
exclusive forum for all derivative or intra-corporate disputes.[14]
Facebook disclosed the precise terms of the forum provision on

---

[14] Specifically: "Our restated certificate of incorporation will provide that
the Court of Chancery of the State of Delaware will be the exclusive forum
for any derivative action . . . any action asserting a breach of fiduciary
duty . . . or any action asserting a claim against us that is governed by the
internal affairs doctrine." (Facebook's S-1, 2/1/12, at 136 (attached as
Clubok Decl., Ex. C).

33

April 23, 2012, when it filed an amendment to its Registration
Statement and attached as Exhibit 3.3., the actual draft of the
Certificate that would be filed with the Delaware Secretary of
State upon conclusion of the IPO.[15]  (See Facebook's S-1,
4/23/12, at Ex. 3.3 (attached as Clubok Decl. 11/14/12, Ex. D).
The Prospectus also communicated that, "[o]ur restated
certificate of incorporation will provide that the Court of
Chancery of the State of Delaware will be the exclusive forum."
(Clubok Decl. 11/14/12, Ex. E).  Accordingly, the forum
selection clause was repeatedly and reasonably communicated to
Derivative Plaintiffs.

As to the second prong, "[a] forum selection clause is
viewed as mandatory when it confers exclusive jurisdiction on
the designated forum or incorporates obligatory venue language."
Phillips, 494 F. 3d at 386.  Here, the forum selection clause
is mandatory, not permissive.  The provision states, in relevant
part, that "the Court of Chancery of the State of Delaware
shall, to the fullest extent permitted by law, be the sole and
exclusive forum" for the designated types of actions.  (Clubok
Decl. 11/14/12, Ex. B at Art. IX).  The use of the word "shall"

---

[15] At the beginning of the Registration Statement, Facebook expressly stated
that "[u]nless expressly indicated or the context requires otherwise, all
information of this prospectus assumes . . . the filing of our restated
certificate of incorporation . . . in connection with our initial public
offering."  (Clubok Decl. 11/14/12, Ex. E).

has been construed by courts to make such clauses "classically

mandatory." Crewe v. Rich Dad Educ., LLC, --- F. Supp. 2d ---,

2012 WL 3240185, at *21 (S.D.N.Y. Aug. 3, 2012).


          Facebook Defendants, however, fail to meet the third

inquiry because the claims and parties involved in this suit

cannot be subject to the forum selection clause.  Facebook

Defendants contend that the provision expressly states that it

covers "(1) any derivative action or proceeding brought on

behalf of the corporation; (2) any action asserting a claim of

breach of a fiduciary duty owed by, or other wrongdoing by, any

director, officer, employee or agent of the corporation to the

corporation or the corporation's stockholders . . . or (5) any

action asserting a claim governed by the internal affairs

doctrine."  (Clubok Decl. 11/14/12, Ex. B at Art. IX).  They

maintain that the Derivative Plaintiffs meet all three criteria

as they "(1) are styled as derivative actions (All Complaints ¶

1); (2) assert claims against Facebook's directors for breach of

fiduciary duty (Levy Compl. ¶¶ 80-87, 106-10; Cole Compl. ¶¶ 91-

97; Child Compl. ¶¶ 58-64); and (3) plead claims based on duties

allegedly owed to the company by its officers and directors that

are governed by the internal affairs doctrine."  (Defendants'

Memo. - Motion to Dismiss at 11).

35

In opposition, Derivative Plaintiffs maintain that the clause is unenforceable because it was adopted without their consent and therefore constitutes an impermissible unilateral modification, disallowed under Galaviz v. Berg, 763 F. Supp. 2d 1170 (N.D. Cal. 2011). (Childs Opp. - Motion to Dismiss at 6-8; Hubuschman/ Cole Opp. - Motion to Dismiss at 8-10). The Derivative Plaintiffs also advance that, under Delaware law and under its express terms, the forum selection clause did not become effective until May 22, 2012, when Defendant Zuckerberg signed the Restated Certificate and filed it with the Delaware Secretary of State. (Childs Opp. - Motion to Dismiss at 4-6, citing to Clubok Decl., Ex. B at 1; Hubuschman/ Cole Opp. - Motion to Dismiss at 9 n.9).

In Galaviz, a case of first impression, the forum selection clause was "unilaterally adopted" as a bylaw "by the directors who are defendants in this action, after the majority of the purported wrongdoing is alleged to have occurred, and without the consent of existing shareholders who acquired their shares when no such bylaw was in effect." Galaviz, 763 F. 1174. The Galaviz Court denied defendants' motion to dismiss on the grounds of improper venue, holding that "[u]nder these circumstances, there is no basis for the Court to disregard the plaintiffs' choice of forum . . . " Id. at 1174-75. The Court

36

reasoned that it would be inequitable to apply the forum clause

to plaintiffs, who had purchased their shares before the bylaw

was adopted and therefore had no notice of it.  The Court also

suggested that the result may have been different if the clause

were adopted in the company's certificate of incorporation,

after a shareholder vote.  See id. at 1174-75 & n.6 ("Certainly

were a majority of shareholders to approve such a charter

amendment, the arguments for treating the venue provision like

those in commercial contracts would be much stronger") and ("The

comment in Revlon that appears to have precipitated Oracle's

bylaw amendment specifically referred to 'charter provision . .

.'") (citing In re Revlon, Inc. S'holders Litig., 990 A.2d 940,

960 (Del. Ch. 2010)).


     Putting aside whether the reasoning in Galaviz should

now extend to certificates of incorporation,[16] the forum

selection clause here was adopted by the Board and approved by

Facebook's pre-IPO stockholders by written consent without a

meeting in accordance with Section 228 of Delaware General

Corporation Law.  (See Clubok Decl. 11/14/12, Ex. B).  As such,

---

[16] The Court recognizes the considerable debate on the efficacy,
enforceability and desirability of the use of exclusive forum provisions and
declines to advance any position here.  See e.g., David Hernand and Thomas
Baxter, Under Fire:  Continued Attacks on Exclusive Forum Provisions May Slow
Adoption, 16 No. 5 M & A Law 12 (2012); Bonnie White, Note, Reevaluating
Galaviz v. Berg:  An Analysis of Forum-Selection Provisions in Unilaterally
Adopted Corporate Bylaws as Requirement Contracts, 160 U. Pa. L. Rev. PENNumbra
390 (2012).

there was no need to obtain consent from these Derivative

Plaintiffs to amend the Certificate, and therefore its adoption

does not constitute an impermissible unilateral modification.

Under Delaware law, however, a certificate of

incorporation, or any amendment to it, becomes effective only

"when filed with the Delaware Secretary of State." Blades v.

Wisehart, No. 5317-VCS, 2010 WL 4638603, at *3 (Del. Ch. Nov.

17, 2010); see also 8 Del. C. § 103(d) ("Any instrument filed in

accordance with subsection (c) of this section shall be

effective upon its filing date.").  The Certificate here was

filed and thus became effective on May 22, 2012, four days after

the Company's IPO.  (See Clubok Decl. 11/14/12, Ex. B).  The

Original Certificate, filed on July 29, 2004, was therefore in

effect until the new filing and on the date of the IPO.  In

addition, the fact that a corporation's may amend any proposed

amendment to a certificate of incorporation "at any time prior

to the effectiveness of the filing of the amendment with the

Secretary of State . . . ." further supports that the Original

Certificate was in effect until the Certificate's filing.  8

Del. C. § 242(c).

Facebook's S-1 Forms also stated that the proposed

revision to the Original Certificate, including the forum

38

selection clause, would take place once the Certificate became
effective.  (See Clubok Decl. 11/14/12, Ex. C) (stating that
"[o]ur restated certificate of incorporation will provide that
the Court of Chancery of the State of Delaware will be the
exclusive forum for any derivative action or proceeding brought
on our behalf . . . .") (emphasis added).  While such language
may have provided notice to prospective shareholders, it does
not become part of Facebook's charter until the date of the
Certificate's filing.  See 8 Del. C. § 103(d).


Accordingly, the claims and parties involved in this
action are not subject to the forum selection clause in the
Certificate.  The Facebook Defendants' motion to dismiss based
on the forum selection clause and venue is therefore denied.


C) **The Derivative Plaintiffs Cannot Establish Standing Nor
Adequately Plead Demand Futility**

Courts have reasoned that if "a books and records
demand is to investigate wrongdoing and the plaintiff's sole
purpose is to pursue a derivative suit, the plaintiff must have
standing to pursue the underlying suit to have a proper
purpose."  West Coast Mgmt. & Capital, LLC v. Carrier Access,
914 A.2d 636, 641 (Del. Ch. 2006).  Thus, "[i]f plaintiff would
not have standing to bring suit, plaintiff does not have a

proper purpose to investigate wrongdoing because its stated
purpose is not reasonably related to its role as a stockholder."
Graulich v. Dell Inc., No. 5846-CC, 2011 WL 1843813, at *5 (Del.
Ch. May 16, 2011); see In re Bank of N.Y. Derivative Litig., 320
F.3d 291, 298 (2d Cir. 2003) ("[A] plaintiff must have owned
stock in the corporation throughout the course of the activities
that constitute the primary basis of the complaint.").

Derivative Plaintiffs do not plead that they acquired
their shares before May 18, 2012, the day of the IPO.[17]  To the
contrary, Derivative Plaintiffs admit that they purchased shares
in the public market the day of Facebook's IPO. (See Levy Compl.
¶ 18; Childs Compl. ¶ 5; Hubuschman/ Cole Opp. – Motion to
Dismiss at 21).  Instead, Derivative Plaintiffs contend that
they have demonstrated contemporaneous ownership because the IPO
itself occurred on May 18, 2012 and that the alleged wrongs
happened on the date of the IPO.  (See Childs Opp. – Motion to
Dismiss at 16) (stating that the selling of the "IPO shares to

---

[17] Plaintiffs Hubuschman and Cole alleges that each "was, at times relevant
hereto, an owner and holder of Facebook stock." (Hubuschman/ Cole Compl. ¶
12).  This does not satisfy the Twombly standard.  550 U.S. at 570.  Nor does
the vague allegation plead specific facts showing continuous and
contemporaneous share ownership.  See Metcalf v. Zoullas, No. 11-CV-
3996(AKH), 2012 WL 169874, at *3 (S.D.N.Y. Jan. 19, 2012) ("Because Rule 23.1
requires particularized allegations, the pleading standard is higher than the
standard is higher than the standard applicable to a pleading subject to a
motion to dismiss pursuant to Rule 12(b)(6)."); see also In re Accuray, Inc.
S'holder Derivative Litig., 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010)
("Plaintiffs generally allege that they were shareholders of 'Accuray at the
time of the continuing wrongs complained of herein.'  This vague allegation
does not satisfy the strict standard of Rule 23.1.").

40

the public is the core wrongful conduct."); (Hubuschman/Cole

Opp. – Motion to Dismiss at 22-24) (stating that they "do not

challenge the price of the IPO or misconduct that occurred

before the IPO[,]" but instead contend that all "alleged wrong

here happened on the date of the IPO; namely the Director

Defendants' conscious inactions on the date the stock was

issued, not the Board's previous authorization of the IPO.").

Plaintiff Childs adds that the Facebook "Defendants' effort to

restate the Complaint as emphasizing acts preparatory to the IPO

as the core of wrongful conduct should be rejected." (Childs

Opp. – Motion to Dismiss at 15).


    Federal and Delaware courts have repeatedly held that

even plaintiffs who acquire shares during an IPO are not

permitted to bring derivative actions based on allegedly

wrongful conduct that took place before they acquired their

shares. In Grigs v. Jornayvaz, for example, the Court held that

plaintiffs had no derivative standing to allege that a

disclosure in the company's form S-1 was rendered misleading by

a transaction on the eve of the IPO because they did not acquire

their shares until the IPO, after the S-1 was already declared

effective. No. 09-CV-629-PAB-KMT, 2010 WL 4932674, at *3-4 (D.

Colo. Nov. 29, 2010) ("[Nominal Defendant's] stock was not

public until April 22, 2008. . . As a result, according to the

41

contemporaneous ownership rule, plaintiffs cannot base any of
their claims on transactions that took place prior to April 22,
2008").

Additionally, the Delaware Supreme Court in 7547
Partners v. Beck established that, under the contemporaneous
ownership rule, "the timing of the allegedly wrongful
transaction must be determined by identifying the wrongful acts
which [plaintiffs] want remedied and which are susceptible of
being remedied by a legal tribunal." 682 A.2d 160, 162 (Del.
1996) (citation and internal quotations omitted). The Court
held that the derivative plaintiff lacked standing to challenge
the pricing terms, including an underwriter's discount, set
forth in its prospectus because she must have been a shareholder
at the time the terms "were established." Id. at 163. The
Court emphasized that the allegations in the complaint made
clear that the transaction for which the plaintiff sought a
remedy took place at the time of the terms, rather than at the
execution of the sale. Id. at 161-63.

Similarly, here, the challenged disclosures were made
prior to the IPO and appeared in the Prospectus, which was
declared effective by the SEC, before the Derivative Plaintiffs
acquired their shares. (Facebook's S-1, 5/16/12, at 141-48

42

(Clubok Decl., Ex. E)). As stated in the Derivative Plaintiffs' complaints, Facebook Defendants' alleged failures include, among other things, permitting Facebook to complete its IPO by allowing for a misleading documents, including the Registration Statement, to be filed and disseminated while knowing that a select group of potential investors were privy to proprietary information regarding the Company's projected earnings (Levy Compl. ¶¶ 81-84; Childs Compl. ¶¶ 59-64; Hubuschman/ Cole Compl. ¶¶ 93-96); selling their Facebook stock with knowledge of the non-proprietary, non-public projections (Levy Compl. ¶ 106-110; Hubuschman/ Cole Compl. ¶¶ 94, 105); and other claims, such as waste of corporate assets and insider trading, in connection with the above (Childs Compl. ¶ 75; Levy Compl. ¶ 95; Hubuschman/ Cole Compl. ¶ 99).

It is undisputed that Facebook filed and signed its Registration Statement, made all amendments to the Registration Statement, and participated in an IPO roadshow with the Lead Underwriters prior to May 18, 2012. (Facebook's S-1, 5/16/12, at 163-67 (Clubok Decl. 11/14/12, Ex. E)). The Offering Documents also declared that the Board had approved of the Selling Defendants selling their shares to the underwriting syndicate before they became available in the open market. (Facebook's S-1, 5/16/12, at 163-67 (Clubok Decl. 11/14/12, Ex.

43

E). The Offering Documents' terms were disclosed to investors
on the day of the IPO. All of the above events occurred before
the Company and the Lead Underwriters issued shares to the
investing public, including the Derivative Plaintiffs, in the
IPO. The alleged wrongful conduct is therefore not "the
technicality of [the IPO's] consummation" as Derivative
Plaintiffs now assert in their opposition papers, Beck, 682 A.2d
at 163, and they cannot assert that they were shareholders at
the time the terms of the challenged disclosures were made.

Derivative Plaintiffs attempt to distinguish Beck by
citing to Maclary v. Pleasant Hills, Inc., 109 A.2d 830, 834
(Del. Ch. 1954) and Leung v. Shuler, No. 17089, 2000 WL 264328
(Del. Ch. 2000), an unpublished case, as instructive. In those
cases, the Delaware Chancery Court held that the plaintiffs had
standing to pursue their claims as the issuance of the stock
itself was the alleged wrong. Leung, 2000 WL 264328, at *8;
Maclary, 109 A.2d at 834. They contend that their claims are
similar because, as in those cases, "the alleged wrong [was] the
issuance of the stock . . . rather than its authorization by the
board two months before." (Hubuschman/ Cole Opp. – Motion to
Dismiss at 24) (citing to Leung, 2000 WL 264328, at *8).

Specifically, in Maclary, the derivative action sought

44

the cancellation of 100 shares of stock allegedly issued without

consideration, and where the challenged shares had not been

issued until 3 years after the resolution and more than 1 year

after plaintiffs became equitable stockholders.  109 A.2d at

833.  Notably, the defendant directors were alleged to have

continued to act culpably after the plaintiffs had acquired

their shares by engaging in the complained-of issuance of

securities.  Id. at 833.  Moreover, the Beck Court confined

Maclary to the "facts of that case," in which plaintiffs were

seeking cancellation of the stock and alleging that the issuance

of the shares was unlawful.  Beck, 682 A.2d at 162.  Leung is

also distinguishable as the derivative claims were based on

exchange of shares during a merger, issued at a price allegedly

below fair market value, and in which an insider sale was not

disclosed to shareholders until after their shares had been

automatically converted.  Leung, 2000 WL 264328, at *3, 8.  In

such instances, the wrongdoing was the issuance of the stock

itself.


        By contrast, here, as in Beck, the alleged misconduct

was completed with the approval of the allegedly misleading

Registration Statement, which went into effect the day before

the IPO, and when the Offering Documents were disclosed to

investors on the day of the IPO.  For example, all sales of

stock by the Selling Defendants were not sold on the open
market, but instead, as the Offering Documents disclosed, sold
to the underwriters.[18]  Given that Plaintiffs Levy and Childs
plead that they acquired their shares on the open market (Levy
Compl. ¶ 18; Childs Compl. ¶ 5), and Plaintiff Cole admits that
he did as well (Cole Opp. – Motion to Dismiss at 21), they
cannot now establish standing through contemporaneous ownership
when all of the alleged wrongs occurred prior to the acquisition
of their shares.

        Plaintiffs Hubuschman and Cole highlight the Board
members' alleged conscious inactions on May 18, 2012 to support
their standing argument.[19]  (Hubuschman/ Cole Opp. – Motion to
Dismiss at 24) (citing to Hubuschman/ Cole Compl. ¶¶ 3, 46-47,
93, 96, 99, 100).  "Where a claim of directorial liability for
corporate loss is predicated upon conscious inaction, '. . .
only a sustained or systematic failure of the board to exercise
such oversight – such as an utter failure to attempt to assure a
reasonable information and reporting system exists – will

---

[18] As Plaintiff Childs explains, that is how IPOs work: "Facebook's investment
bankers, serving as underwriters, were directly responsible for the
distribution of the Facebook shares to the public and the development of the
market for those shares."  (Childs Opp. – Motion to Dismiss at 18).

[19] The Court notes that allegations of conscious inaction are usually reserved
for discussions of demand futility under the standard set in In re Caremark
Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996), and addresses
them to the extent that such discussion may be applicable to the issue of
standing.

establish the lack of good faith that is a necessary condition

to liability.'" In re Veeco Instruments, Inc. Secs. Litig., 434

F. Supp. 2d 267, 276 (S.D.N.Y. June 14, 2006) (citing to

Caremark, 698 A.2d at 971). None of the allegations cited in

Plaintiffs Hubuschman and Cole's complaint specifically

demonstrate how the Facebook Defendants failed to take action in

the face of the knowledge of any alleged wrongdoing on the day

of the IPO. In fact, most of the cited-to allegations involve

alleged wrongdoing in connection with the Registration

Statement, (See e.g., Hubuschman/ Cole Compl. ¶¶ 3, 46-47, 99),

or are general allegations with no evidence of wrongdoing on May

18, 2012 specifically. (See e.g., Hubuschman/ Cole Compl. ¶¶

96, 100).


Derivative Plaintiffs also explicitly and implicitly

rely on the "continuing wrong" exception to the contemporaneous

ownership requirement to contend that the Facebook Defendants

engaged in a "continuing wrong" because they failed to cancel

the IPO. (Levy Opp. - Motion to Dismiss at 21-22; Childs Opp. -

Motion to Dismiss at 20; Cole Opp. - Motion to Dismiss at 23-

24). "This doctrine permits a derivative plaintiff to challenge

a corporate action that occurred before the plaintiff became a

shareholder if that action was part of a continuing fraud or

impropriety that was begun but not completed at the time the

47

plaintiff became a shareholder." Ensign, 1990 WL 213085, at *2.

Their complaints, however, are devoid of any specific allegations as to any "continuing fraud or impropriety." Moreover, "[t]he continuing wrong doctrine has not been universally adopted by the federal courts, and it has been invoked sparingly by those courts that have adopted it." Id. at *3. The Second Circuit has conceded that "it is unclear whether the doctrine is the law of this Circuit." In re Bank of N.Y. Derivative Litig., 320 F.3d at 296; Silverstein ex rel. Tetragon Financial Group Ltd. v. Knief, 843 F. Supp. 2d 441, 445 (S.D.N.Y. 2012) (stating that the Second Circuit has "reject[ed] the continuing wrong doctrine adopted by some courts."). Thus, even if the complaints adequately alleged that they were continuously wronged, this Circuit does not appear to recognize the doctrine and has explicitly rejected the "expansive definition of the term 'transaction' that is inherent to the continuing wrong doctrine." In re Bank of N.Y. Derivative Litig., 320 F.3d at 298.

Accordingly, because the Derivative Plaintiffs were not stockholders at the time the alleged wrongful transactions took place, they cannot establish standing for their derivative claims.

48

Moreover, even assuming that Derivative Plaintiffs could establish standing, in addition to the contemporaneous ownership rule, plaintiffs must also meet the demand requirement. Fed. R. Civ. P. 23. It is well established that demand requirements for a derivative suit are determined by the law of the state of incorporation. See Kamen, 500 U.S. at 98–101. Because Facebook is a Delaware corporation, the sufficiency of the Derivative Plaintiffs' demand futility allegations is analyzed under Delaware law.

Pursuant to Delaware law, a plaintiff in a shareholder derivative action must allege either: (1) that he has made a demand upon the corporation's board of directors to take the requested action; or (2) the reasons why such a demand upon the board would be futile. See Rales v. Blasband, 634 A.2d 927, 930 (Del. 1993); Aronson v. Lewis, 473 A.2d 805, 808 (Del. 1984) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). In order to sufficiently allege that a demand upon the board would have been futile, a plaintiff must present particularized facts showing that the board is "incapable of exercising its power and authority to pursue derivative claims directly." White v. Panic, 783 A.2d 543, 551 (Del. 2001). The plaintiff may not rely on mere conclusory allegations. In re

49

inforUSA Inc. S'holders Litig., 953 A.2d 963, 985 (Del. Ch. 2007). The pleading burden imposed by Rule 23.1 is a high hurdle for plaintiffs to clear. McPadden v. Sidhu, 964 A.2d 1262, 1269 (Del. Ch. 2008) (noting that this burden "is more onerous than that demanded by Rule 12(b)(6).").

If a decision of the board of directors is being challenged in a derivative suit, a court may apply the Aronson test, under which a plaintiff must plead sufficient facts to raise a reasonable doubt that: "(1) the [majority of the] directors are disinterested and independent and (2) [that] the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814. Thus in order to survive dismissal, a complaint must allege facts that the corporate "officers and directors are under an influence which sterilizes their discretion, [so that] they cannot be considered proper persons to conduct litigation on behalf of the corporation." Id. at 813.

In some cases, however, the Delaware Supreme Court has recognized that the Aronson test does not apply, where a loss eventuates not from a board's decision but rather from considered inaction. In these Caremark cases, "[a] court must determine whether or not the particularized factual allegations

50

of a stockholder complaint create a reasonable doubt that, as of the time of the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales, 634 A.2d at 934.

"Independence is a fact-specific determination made in the context of a particular case." Beam ex. Rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1049-50 (Del. 2004). Specific factual allegations that a director faces a "substantial likelihood of liability," for example, may establish a reasonable doubt as to a director's disinterestedness. Aronson, 473 A.2d at 815; Rales, 634 A.2d at 936. Allegations of facts supporting a reasonable inference that a director is so beholden to an interested party that his "discretion would be sterilized" also establish a reasonable doubt as to the director's independence. Rales, 634 A.2d at 936, citing Aronson, 473 A.2d at 815. A plaintiff is not required to prove success on the merits to show that a demand upon the board would have been futile. See Rales, 634 A.2d at 934.

Derivative Plaintiffs contend that Facebook's Board was not independent or disinterested for demand purposes because

51

(i) Defendants Zuckerberg, Breyer and Thiel face a substantial
likelihood of liability for breach of fiduciary duty based on
their allegedly improper stock sales and (Levy Compl. ¶ 78; Cole
Compl. ¶ 70; Childs Compl. ¶¶ 47-56); (ii) the entire Board is
dominated and controlled by Defendant Zuckerberg (Levy Compl. ¶
78(c); Cole Compl. ¶ 76; Childs Compl. ¶ 55); and (iii) the
entire Board has business connections that render them not
independent and subject to a substantial likelihood of liability
for various alleged misconduct (Levy Compl. ¶ 78; Cole Compl. ¶
71).

First, Derivative Plaintiffs assert their claims for
breach of fiduciary duty of loyalty under Brophy v. Cities Serv.
Co., 70 A. 2d 5 (Del. Ch. 1949).  They allege claims against the
Selling Defendants because they purportedly "sold stock in the
IPO on the basis of [material, non-public] information," namely
Facebook's mid-quarter internal revenue projections.  (Cole Opp.
– Motion to Dismiss at 13-14; Levy Opp. – Motion to Dismiss at
13).  Specifically, Plaintiffs Hubuschman and Cole contend that
the Selling Defendants, as well as the entire Board, "knew that
in the months leading up to the IPO, Facebook had experienced
increased mobile usage of its website, which had caused negative
trends in the Company's advertising business."  (Hubuschman/
Cole Opp. – Motion to Dismiss at 13).

To state a claim under Brophy, a plaintiff must allege
that: "1) the corporate fiduciary possessed material, nonpublic
company information; and 2) the corporate fiduciary used that
information improperly by making trades because she was
motivated, in whole or in part, by the substance of that
information." In re Oracle Corp. Derivative Litig., 867 A.2d
904, 934 (Del. Ch. 2004). "This doctrine is not designed to
punish inadvertence, but to police intentional misconduct."
Guttman v. Huang, 823 A.2d 492, 505 (Del. Ch. 2003). "The
internal information known to the defendant can be hard, in the
sense of actual historical operating results, or soft, in the
sense of trends or projections." Pfeiffer v. Toll, 989 A.2d
683, 691 (Del. Ch. 2010) abrogated on other grounds by Kahn v.
Kolberg Kravis Roberts & Co., L.P., 23 A.3d 831 (Del. Supr. June
20, 2011). Because Brophy claims "depend importantly on proof
that the selling defendants acted with scienter[,]" Guttman, 823
A.2d at 505, "Delaware courts . . . have been reluctant to
require disclosure of information that does not bear reliably on
firm value, particularly soft information such as projections of
performance or estimates of value." In re Oracle, 867 A.2d at
938 n. 149; see also Repairman's Serv. Corp. v. Nat'l
Intergroup, Inc., No. 7811, 1985 WL 11540, at *8 (Del. Ch. Mar.
15, 1985) (stating that "[g]enerally, 'soft' information, such

as projections and estimates as to value, need not be disclosed
due to their lack of reliability.").

Derivative Plaintiffs aver that their complaints plead
with particularity that the Facebook Defendants knew, when they
knew it, that they hid what they knew from the marketplace and
then used what they knew as a motivation for profit on their
trades. (Hubuschman/ Cole Opp. – Motion to Dismiss at 13).
Facebook Defendants, however, repeatedly made express and
extensive warnings in the Company's Registration Statement,
drafts of the Registration Statement and in its final Offering
Documents about the trend of increased use of mobile
applications. (See e.g., Clubok Decl. 12/15/12, Ex. 2 (April
23, 2012 Registration Statement) at 14; Clubok Decl. 5/9/12, Ex.
3) (stating that "[t]he loss of advertisers, or reduction in
spending by advertisers with Facebook, could seriously harm our
business."). Thus, even if internal projections could be
considered material to the IPO, Derivative Plaintiffs have not
demonstrated that the Facebook projections would have
"significantly altered the total mix of information in the
marketplace[,]" considering that these disclosures were publicly
disseminated. In re Oracle, 867 A.2d at 934 (internal
quotations omitted).

54

Thus, contrary to their contention, Derivative
Plaintiffs have not alleged particularized facts that support an
inference that the Board possessed information that was
materially different from what existed in the marketplace.  Even
assuming the information was material and non-public, Derivative
Plaintiffs have not adequately alleged the second element of
Brophy to suggesting "that each sale by each individual
defendant was entered into and completed on the basis of, and
because of adverse material non-public information."  Guttman,
823 A.2d at 505 (internal quotations omitted).  According to the
Plaintiffs Hubuschman and Cole, allegations that a defendant
sold stock while in "knowing possession" of material non-public
information are sufficient at the pleading stage to establish
improper motivation and liability under Brody.  (Hubuschman/
Cole Opp. – Motion to Dismiss at 13) (citing cases).  However,
each of their cited cases found that improper motivation can be
inferred where the timing of the sales suggests that defendants
intentionally perpetrated, or took advantage of, a fraud.

For example, in Pfeiffer, the defendants publicly
projected revenue growth of 20 percent for the upcoming years
without any "reasonable basis in fact" and then, during that
same period, sold 14 million shares of their stock.  989 A.2d at
688-89.  The Court found that the defendants' trades were

55

"sufficiently unusual in timing and amount to support a
pleading-stage inference that the sellers took advantage of
confidential corporate information."  Id. at 694.  Similarly, in
In re American Int'l Group, Inc., defendants sold their stock
while the company was "permeated by the frauds described
earlier, all of which, if known, would have made AIG a much less
attractive investment."  965 A.2d 763, 800 (Del. Ch. 2009); see
also In re Fossil, Inc., 713 F. Supp. 2d 644, 652 (N.D. Tex.
2010) (finding a strong inference of scienter where, "[s]pecific
to each Defendant, the [complaint] allege[d] the approval or
acceptance of backdated options, participation in or
responsibility for compensation and options as a committee
member, oversight of the Company's internal controls, and
approval of false financial statements.")

        In contrast, Derivative Plaintiffs here do not
explicitly allege any fraud or scienter adequately.  Unlike in
the cited cases above, the Selling Directors sold their stock in
the IPO.  Without more than generic accusations, "such sales
raise no inference of fraud" as "[e]arly investors and promoters
routinely sell stock in IPOs."  In re Prestige Brands Holding,
Inc., No. 05-CV-6924(CLB), 2006 WL 2147719, at *7 (S.D.N.Y. July
10, 2006).

Derivative Plaintiffs also allege that the Board is dominated and controlled by Zuckerberg, but have not alleged facts with specificity suggesting that he personally engaged in any wrongdoing that would render him "interested" for the purposes of this lawsuit. See Rales, 634 A.2d at 936 ("To establish lack of independence, [a plaintiff] must show that the directors are 'beholden' to the [interested person]."  In addition, even if Derivative Plaintiffs adequately allege that Zuckerberg is interested, they must overcome the presumption that the Board acts independently of him." See Beam, 845 A.2d at 1048-49 (stating that "[t]he key principle upon which this area of our jurisprudence is based is that the directors are entitled to a presumption that they were faithful to their fiduciary duties.  In the context of presuit demand, the burden is upon the plaintiff in a derivative action to overcome that presumption.") (emphasis in the original).

In their complaints, Derivative Plaintiffs first rely on the fact that Zuckerberg controls over half of Facebook's voting shares and thus purportedly determines the composition of the Board.  (Hubuschman/ Cole Opp. - Motion to Dismiss at 16).  However, the Delaware Supreme Court has repeatedly held that "even proof of majority of ownership of a company does not strip the directors of the presumption of independence." Aronson, 473

A.2d at 815; see also Beam, 845 A.2d at 1054 ("A stockholder's control of a corporation does not excuse presuit demand on the board . . . .").

Plaintiffs Hubuschman and Cole concede that "controlling voting power alone may not be sufficient to establish that a director lacks independence." (Hubuschman/ Cole Opp. - Motion to Dismiss at 17 n.5). Thus, the Derivative Plaintiffs bolster their allegations by noting that members of the Board have had past business dealings with Zuckerberg and the Company. (Levy Opp. - Motion to Dismiss at 14-16; Hubuschman/ Cole Opp. - Motion to Dismiss at 17-18; Childs Opp. - Motion to Dismiss at 13-15). They contend that their complaints sufficiently allege that the Board has "entangled alliances with Zuckerberg, including material financial interests, and that they depend upon Zuckerberg for their continuing positions on the Board . . . ." (Hubuschman/ Cole Opp. - Motion to Dismiss at 17) (citing to Hubuschman/ Cole Compl. ¶¶ 80-84).

However, "[m]ere allegations that [directors] move in the same business and social circles, or a characterization that they are close friends, is not enough to negate independence for demand excusal purposes.") Beam, 845 A.2d at 1051-42. Instead,

58

"a plaintiff must plead facts that would support the inference
that because of the nature of a relationship or additional
circumstance other than the interested director's stock
ownership or voting power, the non-interested director would be
more willing to risk his or her reputation than risk the
relationship with the interested director."   Id. at 1052.


Derivative Plaintiffs fail to meet this burden.   They
allege that Zuckerberg's unilateral decision to cause Facebook
to acquire Instagram, Inc. ("Instagram") demonstrates his
domination and control over the Board and that Andreessen felt
"a sense of owingness" to Zuckerberg because Andreessen's
venture capital firm made money on Facebook's acquisition of
Instagram.   (Hubuschman/ Cole Opp. - Motion to Dismiss at 17;
Childs Opp. - Motion to Dismiss at 14).   Derivative Plaintiffs
aver that "[t]his material financial benefit is precisely the
type that courts routinely find may instill in a director 'a
sense of owingness' to another director, disabling him from
considering a demand."   (Hubuschman/ Cole Opp. - Motion to
Dismiss at 17) (citing to In re The Ltd., Inc. S'holder Litig.,
2002 WL 537692, at *7 (Del. Ch. Mar. 27, 2002) (finding a
director beholden to controlling director who gave a $25 million
dollar gift to a university where the director was president.")).

However, Derivative Plaintiffs do not allege that
Facebook paid more for Instagram than it was worth, or that the
acquisition was anything other than a business deal that
benefitted both parties.  Unlike a $25 million donation, which
is "a gift of . . . magnitude [that] can reasonably be
considered as instilling . . . a sense of 'owingness[,]'"  In re
Ltd., 2002 WL 537692, at *7, the Instagram deal was a mutually-
beneficial business dealings.  Courts have found that such
dealings between two directors do not render one dependent upon
the other.  See, e.g., In re Goldman Sachs Grp., Inc. S'holder
Litig., No. 5215-VCG, 2011 WL 4826104, at *9-12 (Del. Ch. Oct.
12, 2011) (rejecting argument that Goldman director lacked
independence because he was the Chairman and CEO of a company
that received billons of dollars in financing from Goldman);
Zimmerman v. Braddock, No. 18473-NC, 2002 WL 31926608, at *10
(Del. Ch. Dec. 20, 2002) (rejecting challenge to Priceline
director's independence despite employment with an investment
banking company that generated almost $1 million in fees from
Priceline).  Derivative Plaintiffs' conclusory claims that other
directors "also received material financial benefits from
Zuckerberg and, therefore, lack independence from him," fail for
the same reasons. (Cole Opp. – Motion to Dismiss at 18; accord
Levy Opp. – Motion to Dismiss at 14-15; Childs Opp. – Motion to
Dismiss at 13-15).

60

Derivative Plaintiffs also assert that Bowles is conflicted because he sits on the board of Morgan Stanley and "cannot be expected to objectively consider a demand, which would undoubtedly focus on wrongdoing by Morgan Stanley, and could jeopardize the business relationship between Facebook and Morgan Stanley." (Childs Opp. – Motion to Dismiss at 14). Plaintiff Childs also contends that Graham and Hastings are not independent directors because they serve as CEOs of The Washington Post and Netflix respectively, which are "major advertiser[s]" with Facebook. (Childs Opp. – Motion to Dismiss at 14-15).

Courts, however, have held that directors are presumptively able to consider independently whether to take legal action that could cause tangential harm to a company with which they are affiliated. See Jacobs v. Yang, No. 206-N, 2004 WL 1728521, at *6 (Del. Ch. Aug. 2, 2004) (while the fact that a decision relates to "companies that directors are affiliated with potentially makes the board's decision more difficult, . . . it does not sterilize the board's ability to decide.") (internal quotation omitted), aff'd, 867 A.2d 902 (Del. 2005). Instead, Plaintiff Childs cites a case under New York law which found that a director lacked independence because "his small,

61

three attorney law firm earned . . . nearly $1 million [from the company] during the two years prior to the filing of the complaint." Tsutsui v. Barasch, 67 A.D.3d 896, 898 (N.Y. App. Div. 2009). This case is distinguishable because the complaints here do not allege that Bowles, Graham or Hastings derived direct personal benefit from Facebook's relationship with their companies, much less one that is "of such subjective material importance" that its "threatened loss might create a reason to question whether the director is able to consider the corporate merits of the [demand] objectively." Telxon Corp. v. Meyerson, 802 A.2d 257, 264 (Del. 2002). Nor does Plaintiff Levy's allegation that Morgan Stanley is "part of the lending team supporting Facebook's revolving credit facility" bolster Plaintiffs' case against Bowles. (Levy Opp. – Motion to 16; Levy Compl. ¶ 78(i)). There are no facts alleged to suggest that Bowles, Graham or Hastings would risk their reputations and careers to protect their respective companies' relationship with Facebook nor any facts that suggest that any of Facebook's Defendants would have or threatened to severe their relations with any of these companies. Without such individualized allegations, there is no basis to assume that these Facebook Defendants did not act independently.

In addition, to the extent that the Derivative

62

Plaintiffs assert Caremark claims that "an unconsidered failure
of the board to act in circumstances in which due attention
would, arguably, have prevented the loss[,]" 698 A.2d at 967;
(see Hubuschman/ Cole Opp. - Motion to Dismiss at 24), the
Derivative Plaintiffs "must demonstrate that the directors
either knew or should have known that violations of the law were
occurring, and that they took no steps in a good faith effort to
prevent or remedy that situation." In re Vecco, 434 F. Supp. 2d
at 276 (citing Caremark, 698 A.2d at 971) (noting that such
claims are "possibly the most difficult theory in corporate law
upon which a plaintiff might hope to win judgment.").

Courts have found "facts that show [that] the company
entirely lacked an audit committee or other important
supervisory structures, or that a formally constituted committee
failed to meet[,] or "[a] claim that an audit committee or board
had notice of serious misconduct and simply failed to
investigate, for example, would survive a motion to dismiss."
David B. Shaev Profit Sharing Acct. v. Armstrong, No. 1449-N,
2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006).

Here, no such facts have been alleged except
allegations that "Defendants Andreessen, Bowles, and Thiel, as
members of the Audit Committee, face a substantial likelihood of

63

personal liability for the issuance of Facebook's Registration Statement."  Without more, these allegations are precisely the type of conclusory statements that do not constitute a <u>Caremark</u> claim.  Derivative Plaintiffs' complaints do not allege that there was a lack of proper compliance systems in place, that these systems failed to function, or that the Board was ever presented with information which they chose to disregard. Instead, the essence of the Derivative Plaintiffs' complaints is that the Board allowed Facebook to file a Registration Statement that did not disclose its internal revenue projections.  (Levy Compl. ¶¶ 10,49; Cole Compl. ¶¶ 5, 48-51; Childs Compl. ¶¶ 2, 33-36).  Courts throughout the country have uniformly agreed that "internal calculations and projections are not material facts that are requires to be disclosed" in a registration statement.  <u>Sheppard v. TCW/DW Term Trust 2000</u>, 938 F. Supp. 171, 177-78 (S.D.N.Y. 1996); <u>see also In re N. Telecom Ltd. Sec. Litig.</u>, 116 F. Supp. 2d 446, 458 (S.D.N.Y. 2000) ("The federal securities laws do not obligate companies to disclose their internal forecasts.") (internal quotations omitted); <u>Rubke v. Capitol Bancorp Ltd.</u>, 551 F.3d 1156, 1163 (9th Cir. 2009) ("[T]here is no duty to disclose income projections in a prospectus."); <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 631 (1st Cir. 1996) ("The federal securities laws impose no obligation upon an issuer to disclose forward-looking

information such as internal projections, estimates of future performance, forecasts, busgets, and similar data.") (internal quotations omitted).  These courts have followed the lead of the SEC, which has consistently refused to adopt a rule that would "require projections or other forward-looking information to be included in [IPO] registration statements." Sec. Offering Reform, 70 Fed. Reg. 44722, 44739 (Aug. 3, 2005).  Derivative Plaintiffs do not cite to any authority holding that internal revenue projections before an IPO must be disclosed or that such nondisclosure is a violation of law, which the directors knew or should have known and then disclosed.

Taken together, Derivative Plaintiffs made no demand to the Board, failed to rebut the presumption that the majority of the Board was interested and have not pled sufficient facts demonstrating the Board's conscious inaction.  Accordingly, Derivative Plaintiffs' failure to adequately plead demand futility, as well as their inability to establish standing, requires dismissal under Rule 23.1.

## D) **Derivative Plaintiffs' Claims are Not Ripe**

Ripeness is a "constitutional prerequisite" to the exercise of jurisdiction by federal court.  Nutritional Health

65

Alliance v. Shalala, 144 F.3d 220, 225 (2d Cir. 1998).  The

ripeness doctrine provides that a dispute may only be

adjudicated when there is "a real, substantial controversy

between parties having adverse legal interests, a dispute

definite and concrete, not hypothetical or abstract."  Motor

Vehicle Mfrs. v. DEC, 79 F.3d 1298, 1305 (2d Cir. 1996)

(citations omitted); see also Pacific Gas & Elec. Co. v. State

Energy Resources Conservation and Dev. Comm'n, 461 U.S. 190,

203, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) (the ripeness

doctrine prevents the premature adjudication of issues that may

never arise.).  Consequently, "when resolution of an issue turns

on whether there are nebulous future events so contingent in

nature that there is no certainty there will ever occur, the

case is not ripe for adjudication."  Thomas v. City of New York,

143 F.3d 31, 34 (2d Cir. 1998) (internal quotation omitted).


        "In order to determine whether an issue is ripe for

adjudication, a court must make a fact-specific evaluation of

'both the fitness of the issues for judicial decision and the

hardship to the parties of withholding court consideration.'"

United States v. Fell, 360 F.3d 135, 139 (2d Cir. 2004).  A

claim is fit for review when it requires no further factual

development to crystallize the legal issues and aid the court in

resolving them.  Ohio Forestry Ass'n v. Sierra Club, 523 U.S.

726, 737, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998); Isaacs v.

Bowen, 865 F.2d 468, 478 (2d Cir. 1989) ("The fitness inquiry is

concerned with whether the issues sought to be adjudicated are

contingent on future events or may never occur."). In assessing

the possible hardship to the parties, the court considers

"whether the challenged action creates a direct and immediate

dilemma for the parties . . ." outside the "mere possibility of

future injury" without the prospect of causing "present

detriment." N.Y. Civil Liberties Union v. Grandeau, 528 F.3d

122, 131 (2d Cir. 2008).


     Derivative Plaintiffs maintain that their claims are

ripe because they have alleged damages to Facebook that have

already occurred. (Hubuschman/ Cole Compl. ¶¶ 51-54, 63-64;

Levy ¶¶ 68-71; Childs ¶¶ 41-42). Specifically, expenditures

include:

   (a) Costs incurred in investigating and defending Facebook
       and certain officers and directors in the class actions
       for violations of federal securities laws; and

   (b) Costs incurred from paying any potential settlement or
       adverse judgment in the already eight filed class actions
       for violations of federal securities laws.

(Hubuschman/ Cole Compl. ¶ 64). In addition, Derivative

Plaintiffs allege reputational harm as well as damages flowing

from the sale of Facebook stock by individual Facebook

Defendants. (Hubuschman/ Cole Compl. ¶ 65; Levy Compl. ¶¶ 68-71; Childs Compl. ¶ 42).

Courts have found damages unrecoverable where they are contingent "on the outcome of a class action suit in which no judgment had been entered or settlement reached." In re Cray Inc., 431 F. Supp. 2d 1114, 1133 (W.D. Wash. 2006). In In re Symbol Technologies Secs. Litig., the plaintiff, like the Derivative Plaintiffs, contended that defendants should "be liable for all costs incurred in defending the class action" against claims of violations of securities laws. 762 F. Supp. 510, 516 (E.D.N.Y. 1991). The Court held that "no injury has been sustained for which plaintiff may sue to recover" when "the damages claims . . . hinge entirely on the outcome of another pending action. . . ." Id. at 516-17. Other courts have similarly found that "derivative claims are foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct" and therefore "[p]laintiffs' damage allegations based on potential costs of the [securities] class action suits are insufficient to state a claim for relief." In re Cray Inc., 431 F. Supp. 2d at 1133-34; see Falkenberg v. Baldwin, No. 76-CV-2409, 1977 WL 1025, at *4 (S.D.N.Y. June 13, 1977) (derivative claim stemming from costs

68

associated with other litigation against company unripe because merits had yet to be determined).

In addition, "the showing of reputational harm must be concrete and corroborated, not merely speculative." Trudeau v. Federal Trade Comm'n, 384 F. Supp. 2d 281, 297 (D.D.C. 2005). Here, Plaintiff Childs cites to a Slate.com opinion piece as indicative of causing "significant reputational harm." (Childs Compl. ¶ 42). The article refers to "annoyed retail investors," and that Facebook "once viewed as a benign force . . . now risks being synonymous with Wall Street money-grubbing."[20] (emphasis added). The article speculates as to potential risks and the harm cited hardly rises to being "concrete and corroborated." Other alleged harms are similarly forward-looking and speculative. (See e.g., Cole Compl. ¶ 65 ("Facebook will suffer from what is known as the "liar's discount" . . . Facebook's ability to raise equity capital or debt on favorable terms in the future is now impaired."); Levy Compl. ¶ 71 ("Facebook will expend significant sums of money . . . .")) (emphasis added).

Thus, where "the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe

---

[20] Rob Cox, One Reason for the Facebook IPO Mess: Zuckerberg Didn't Care, Slate.com, http://www.slate.com/blogs/breakingviews/2012/05/23/one_reason_for_the_facebook_ipo_mess_zuckerberg_didn_t_care_.html.

and the complaint must be dismissed." <u>In re United Telecomms.</u>
<u>Inc., Secs. Litig.</u>, No. 90-2251-EEO, 1993 WL 100202, at *3 (D.
Kan. Mar. 4, 1993) (dismissing derivative claims seeking
"damages that are speculative and contingent upon the outcome of
the class action."). Accordingly, because Derivative Plaintiffs
have not demonstrated that the alleged costs were caused by an
actual corporate wrong, which is not predicated on the
resolution of other litigation, their claims are not ripe and
therefore dismissed on this basis.


### III. **Conclusion**


Based upon the conclusions set forth above, the
Facebook Defendants' motion to dismiss is granted in part on the
grounds of standing and ripeness, and the Derivative Plaintiffs'
complaints are dismissed. Having dismissed the complaints,
Plaintiffs' motions to remand are denied as moot. Derivative
Plaintiffs are granted leave to replead within twenty days.


**New York, NY**
**February /7, 2013**

ROBERT W. SWEET
U.S.D.J.

70

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION, | MDL No. 12-2389 |
|---|---|
| | ECF Case |

ROBERT CROCITTO, Derivatively on Behalf of Himself and All Others Similarly Situated,

Hon. Robert W. Sweet

        Plaintiff,

Case No. 13 Civ. 786 (RWS)

    v.

ECF Case

MARK ZUCKERBERG, et al.,

        Defendants,
  -and-

FACEBOOK, INC., a Delaware corporation,

        Nominal Defendant.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/22/14

**(PROPOSED) JUDGMENT**

**ORDERED, ADJUDGED AND DECREED**, that for the reasons stated in Derivative Opinion

I, in Derivative Opinion II, and in the April 17, 2014 Stipulation and Order, final judgment is

entered dismissing the action in its entirety.

DATED:    New York, New York
        April 21, 2014

**So Ordered**

_____
THE HONORABLE ROBERT W. SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION, | MDL No. 12-2389<br>ECF Case |
| HAL HUBUSCHMAN, Derivatively on Behalf of Himself and All Others Similarly Situated, | Hon. Robert W. Sweet |
| Plaintiff,<br>v. | Case No. 12 Civ. 7553 (RWS)<br>ECF Case |
| MARK ZUCKERBERG, et al., | |
| Defendants,<br>-and- | |
| FACEBOOK, INC., a Delaware corporation, | |
| Nominal Defendant. | |



# (PROPOSED) JUDGMENT

**ORDERED, ADJUDGED AND DECREED,** that for the reasons stated in the Court's February 12, 2013 Opinion and Order, and in the April 17, 2014 Stipulation and Order, final judgment is entered dismissing the action in its entirety.

DATED:   New York, New York
April 21, 2014

**So Ordered:**

_____
THE HONORABLE ROBERT W. SWEET

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4 22 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION, | MDL No. 12-2389 ECF Case |
| LINDA LEVY, Derivatively on Behalf of Himself and All Others Similarly Situated, | Hon. Robert W. Sweet |
| Plaintiff, | Case No. 12 Civ. 7815 (RWS) |
| v. | ECF Case |
| MARK ZUCKERBERG, et al., | |
| Defendants, -and- | |
| FACEBOOK, INC., a Delaware corporation, | |
| Nominal Defendant. | |



**(PROPOSED) JUDGMENT**

**ORDERED, ADJUDGED AND DECREED**, that for the reasons stated in the Court's February

12, 2013 Opinion and Order, and in the April 17, 2014 Stipulation and Order, final judgment is

entered dismissing the action in its entirety.

DATED:     New York, New York
           April ⌐ , 2014

**So Ordered:**

_____
THE HONORABLE ROBERT W. SWEET

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION, | MDL No. 12-2389<br>ECF Case |
| WILLIAM COLE, Derivatively on Behalf of Himself and All Others Similarly Situated, | Hon. Robert W. Sweet |
| Plaintiff,<br>v. | Case No. 12 Civ. 7549 (RWS)<br>ECF Case |
| MARK ZUCKERBERG, et al., | |
| Defendants,<br>-and- | |
| FACEBOOK, INC., a Delaware corporation, | |
| Nominal Defendant. | |



### (PROPOSED) JUDGMENT

**ORDERED, ADJUDGED AND DECREED**, that for the reasons stated in the Court's February 12, 2013 Opinion and Order, and in the April 17, 2014 Stipulation and Order, final judgment is entered dismissing the action in its entirety.

DATED:      New York, New York
            April 21, 2014

**So Ordered:**

_____
THE HONORABLE ROBERT W. SWEET

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/22/14

Sweet, R.

## COURTESY COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FACEBOOK, INC., IPO SECURITIES
AND DERIVATIVE LITIGATION

MDL No. 12-2389 (RWS)

ECF Case

This document relates to the Following
Derivative Actions:

NO. 12-CV-7549  NO. 12-CV-7815
NO. 12-CV-7553  NO. 13-CV-786

## STIPULATION AND (PROPOSED) ORDER

IT IS HEREBY STIPULATED AND AGREED by and between plaintiff Robert Crocitto, derivatively on behalf of Facebook, Inc., and by plaintiffs William Cole, Hal Hubuschman, and Linda Levy, derivatively on behalf of Facebook, Inc., (Cole, Hubsuchman, and Levy are the "Removed Plaintiffs"), and Defendants, and nominal Defendant Facebook, Inc. ("Facebook"), by and through their below-named counsel, that:

1. Pursuant to Federal Rule of Civil Procedure 15(a)(2), with the consent of Defendants and Facebook, plaintiff Crocitto has filed the Amended Verified Shareholder Derivative Complaint ("Crocitto Amended Complaint"), attached hereto as Exhibit A;

2. Facebook has filed a notice of motion to dismiss the Crocitto Amended Complaint on the grounds of standing and ripeness pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the standing and demand requirements of Fed. R. Civ. P. 23.1, attached hereto as Exhibit B;

3. While Crocitto disagrees with the application of facts and law underlying Facebook's notice of motion to dismiss and this Court's February 12, 2013 Opinion and Order (Dkt. No. 66), which granted in part and denied in part Facebook's motions to dismiss plaintiffs Williams Cole, Hal Hubuschman, Linda Levy, and Edward Childs' shareholder derivative complaints ("Derivative Opinion I"), as well as this Court's December 20, 2013 Opinion and Order (Dkt.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/23/14

No. 173), which granted in part and denied in part Facebook's motion to dismiss plaintiffs Gaye Jones and Holly McConnaughey's shareholder derivative complaint ("Derivative Opinion II"), Crocitto recognizes that the basis for the Derivative Opinion I and the Derivative Opinion II, as both opinions currently stand, would require dismissal of the Crocitto Amended Complaint.

4. Briefing and arguments on Facebook's motion to dismiss the Crocitto Amended Complaint would accordingly be substantially duplicative of the briefing and arguments set forth in support of Facebook's motions to dismiss plaintiffs Williams Cole, Hal Hubuschman, Linda Levy, and Edward Childs' shareholder derivative complaints (Dkt. Nos. 23, 24, 25, 50, and 51), and in opposition thereto (Dkt. Nos. 36 and 37), and in support of Facebook's motion to dismiss plaintiffs Gaye Jones and Holly McConnaughey's shareholder derivative complaint (Dkt. Nos. 108, 109, 110, 143, and 144), and in opposition thereto (Dkt. Nos. 122 and 123).

5. An immediate order and judgment dismissing the Crocitto Amended Complaint pursuant to Derivative Opinion I and Derivative Opinion II would allow plaintiff Crocitto to take an immediate appeal of this Court's orders and judgment in order to proceed in conjunction with the Jones plaintiffs' already-noticed appeal relating to Derivative Opinion II, as well as Removed Plaintiffs' potential appeal of Derivative Opinion I, and would be the most efficient and convenient course of proceeding in this action.

6. Removed Plaintiffs do not intend to file an amended complaint at this time, but may appeal the dismissal of their complaints and therefore consent to entry of a judgment against them based upon Derivative Opinion I.

Accordingly, it is hereby ORDERED that the Crocitto Amended Complaint is dismissed on the grounds set forth in Derivative Opinion I and Derivative Opinion II. The Clerk shall enter

judgment in the above-noted actions on the basis of this order.

DATED:  April 17, 2014

By: _An̄ B. Clu̅_

Andrew B. Clubok
Brant W. Bishop, P.C.
Susan E. Engel
Kellen S. Dwyer
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Richard D. Bernstein
Elizabeth J. Bower
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

*Attorneys for Nominal Defendant Facebook,
Inc. and Individual Facebook Defendants*

DATED:  April 17, 2014

By: _____

Brian P. Murray (BM 9954)
Gregory B. Linkh (GL 0477)
GLANCY BINKOW & GOLDBERG LLP
2920 E. 42nd Street, Suite 2920
New York, NY 10168
Tel: (212) 682-5340

Michael M. Goldberg
Ex Kano S. Sams II
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:: (310) 201-9150
Fax: (310) 201-9160

3

judgment in the above-noted actions on the basis of this order.

DATED:  April 17, 2014

By: _____

Andrew B. Clubok
Brant W. Bishop, P.C.
Susan E. Engel
Kellen S. Dwyer
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Richard D. Bernstein
Elizabeth J. Bower
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

*Attorneys for Nominal Defendant Facebook,
Inc. and Individual Facebook Defendants*

DATED:  April 17, 2014

By: _____

Brian P. Murray (BM 9954)
Gregory B. Linkh (GL 0477)
GLANCY BINKOW & GOLDBERG LLP
2920 E. 42nd Street, Suite 2920
New York, NY 10168
Tel: (212) 682-5340

Michael M. Goldberg
Ex Kano S. Sams II
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:: (310) 201-9150
Fax: (310) 201-9160

3

Stephen R. Basser
BARRACK, RODOS & BACINE
One America Plaza
Suite 900
San Diego, CA 92101
Tel: (619) 230-0800
Fax: (619) 230-1874

Mark R. Rosen
BARRACK, RODOS & BACINE
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Richard S. Wayne
Brett M. Renzenbrink
STRAUSS & TROY
The Federal Reserve Building
150 East Fourth Street
4th Floor
Cincinnati, Ohio 45202
Tel: (513) 629-9472
Fax: (513) 629-9426

Fred T. Isquith
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4690
Fax: (212) 545-4653

*Attorneys for plaintiff Robert Crocitto*

DATED: April 17, 2014

By: _____
Shane Palmesano Sanders

4

ROBBINS ARROYO, LLP
600 "B" Street, Suite 1900
San Diego, Ca 92101
Tel: 619-525-3990
Fax: 619-525-3991

*Attorneys for plaintiffs William Cole and Hal Hubuschman*

DATED: April 17, 2014

By: _____
Deborah Clark-Weintraub
Joseph Peter Guglielmo
Scott + Scott, Attorneys at Law LLP
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel: 212-223-6444
Fax: (212) 223-6334

David R. Scott
Scott + Scott, Attorneys at Law LLP (CT)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel: 860-537-5537
Fax: 860-537-4432

Anne L. Box
Scott + Scott, Attorneys at Law LLP (CA)
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508

Gregory M. Egleston
Gainey McKenna & Egleston
440 Park Avenue, South 5th Floor
New York, NY 10016
Tel: 212-983-1300
Fax: 212-983-0380

Scott D. Egleston
Law Offices of Scott D. Egleston
12000 Biscayne Boulevard , Suite 220
North Miami Beach, FL 33181

5

Tel: 305-892-8088

*Attorneys for plaintiff Linda Levy*

IT IS SO ORDERED.

DATED: ___4. 21- 14___

_____
THE HONORABLE ROBERT W. SWEET